IN THE SUPREME COURT OF THE STATE OF IDAHO

DOCKET NO. 48007

| | | |
|---|---|---|
| JARED SOMMER and KATHERINE SOMMER, husband and wife, | ) ) ) | |
| Plaintiffs-Respondents-Cross Appellants, | ) ) ) ) | Twin Falls, Sept. 2021 Term |
| v. | ) ) | Opinion Filed: December 21, 2021 |
| MISTY VALLEY, LLC, an Idaho limited liability company, | ) ) ) | Melanie Gagnepain, Clerk |
| Defendant-Appellant-Cross Respondent. | ) ) ) ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Madison County, Gregory W. Moeller and Steven W. Boyce, District Judges.

The judgment of the district court is affirmed.

Hawley, Troxell, Ennis & Hawley, Pocatello, for Appellant/Cross-Respondent/Defendant. John A. Bailey, Jr., argued.

Manwaring Law Office, Idaho Falls, for Respondents/Cross-Appellants/Plaintiffs. Kipp L. Manwaring argued.

_____

1

BRODY, Justice.

This appeal involves a dispute over the scope of an express easement. Jared and Katherine Sommer brought a declaratory judgment claim against Misty Valley, LLC, after receiving written notice that the real estate developer planned to use an express easement across the Sommers' land for access to a recently platted residential subdivision. The Sommers asserted that the planned use constituted an impermissible expansion of the scope of the easement and brought a claim to terminate the easement. After a bench trial, the district court limited the use of the easement to the dominant parcel, which only included part of Misty Valley's planned subdivision, and declined to terminate it. Misty Valley appealed the district court's judgment, and the Sommers cross-appealed. We affirm the district court's judgment and deny costs and fees on appeal to both parties.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. The Property.

Jared and Katherine Sommer are neighbors of a 152-lot residential subdivision planned by Misty Valley in Madison County, Idaho. The Sommers own the lot that is subject to the express easement at issue, and their home is located across the street and to the east of the easement on another parcel.

The origins of this dispute trace back to a series of land transfers that took place beginning about twenty years ago. Different members of the Saurey family owned and farmed three contiguous parcels. On July 2, 2002, Brent and Patricia Saurey (the "Saureys") conveyed title to a 43-acre parcel ("Brent Saurey Parcel") to the North Fork Duck Club, LLC, together with a grant of easement ("Easement") for ingress, egress, and utilities across the Saureys' retained property ("Servient Parcel"). The Saureys, in granting the parcel and the Easement, "believed that the land would be used for duck hunting and possibly a residential development." The property was zoned "Agricultural" which would have permitted two or three houses on the parcel. The Saureys retained ownership of the Servient Parcel until they sold it to the Sommers in 2017. The following diagram shows the parcels and easement at issue:

2



On the same day of the Brent Saurey Parcel conveyance, Lyle and Jossine Saurey, the parents of Brent and Kerry Saurey, also conveyed title to a neighboring parcel ("Saurey Trust Parcel") to the Duck Club. The language of the warranty deed did not mention the Brent Saurey Parcel conveyance, the Brent Saurey deed, the Brent Saurey Parcel, the Servient Parcel, or the Easement. About a week after that, Kerry Saurey conveyed a third neighboring parcel ("Kerry Saurey Parcel"), to the Duck Club. Again, the language of the warranty deed did not mention the prior conveyances, the Brent Saurey deed, the Brent Saurey Parcel, the Saurey Trust Parcel, the Servient Parcel, or the Easement.

In 2004, about two years after acquiring the three Saurey parcels, the Duck Club conveyed the Brent Saurey Parcel to Misty Valley. In May 2008, Misty Valley also acquired title to the Kerry Saurey Parcel and Saurey Trust Parcel from the Duck Club. Thereafter, Misty Valley applied for a zone change from "Agricultural" to "Trans Ag 2" for all three parcels. The application included a conceptual map of a 130-lot residential subdivision and depicted a road located in the Easement area. Jared Sommer, who at that time, only owned a home located across the street and to the East of the Easement, attended the August 14, 2008 public hearing before the Madison County Planning and Zoning Commission where he voiced his opposition to the application. The Planning and

3

Zoning Commission subsequently approved the zone change for all three parcels. About five years after the zone change, Misty Valley acquired a fourth neighboring parcel from Marie Sommer, Reed Sommer, Gene Brower, and Cheryl Brower (the "Sommer/Brower Parcel"). Again, the conveyance did not contain any mention of the Saurey conveyances described above, the Brent Saurey deed, the Brent Saurey Parcel, the Kerry Saurey Parcel, the Saurey Trust Parcel, the Servient Parcel, or the Easement.

Sometime in the beginning of 2017, Jared Sommer and Brent Saurey discussed an anticipated increase in traffic from Misty Valley's planned subdivision. Thereafter, in May 2017, the Sommers purchased the Servient Parcel from Brent and Patricia Saurey.

On August 3, 2017, Misty Valley applied to the Madison County Planning and Zoning Commission for approval of its first preliminary plat for a 152-lot residential subdivision. The preliminary plat outlined a subdivision that encompassed the Brent Saurey Parcel, the Saurey Trust Parcel, the Kerry Saurey Parcel, and the Sommer/Brower Parcel. In addition, it depicted the Easement as one of two required accesses to the subdivision.



On September 14, 2017, the Planning and Zoning Commission held a public hearing related to the preliminary plat application. Jared Sommer attended the meeting and voiced his opposition to the development. Subsequently, the Planning and Zoning Commission unanimously approved the preliminary plat application. After obtaining approval, Misty Valley initiated contact with the

Sommers to inquire about purchasing the Easement property. The Sommers and Misty Valley negotiated, but ultimately did not reach an agreement.

On June 14, 2018, Misty Valley sent the Sommers a letter advising them that Misty Valley planned to build a fence and pair of gates on the Easement property. Jared Sommer testified at trial that Misty Valley did not seek his prior approval or consent for the fence and gates. After receipt of the June 14 letter, the Sommers revoked any outstanding offers to the sell the Easement property to Misty Valley, and sent a cease and desist letter pertaining to construction of Misty Valley's intended fence and gates on the Easement property.

### B. Procedural History

The Sommers filed suit against Misty Valley on August 22, 2018, requesting the court issue a declaratory judgment that Misty Valley's intended use of the Easement for access to its planned subdivision unlawfully expanded the use of the Easement beyond the Brent Saurey Parcel. The Sommers included a claim to terminate the easement. Misty Valley timely answered and asserted, among other things, the defenses of the statute of limitations under Idaho Code section 5-224 and quasi-estoppel.

The Sommers filed their first motion for partial summary judgment in October 2018, asking the district court to rule as a matter of law that the Easement was appurtenant only to the Brent Saurey Parcel. Misty Valley responded with its own motion for partial summary judgment, asserting that the Sommers' action was time-barred under Idaho Code section 5-224 and that the Kerry Saurey Parcel and the Saurey Trust Parcel were part of the "dominant estate."

The district court denied summary judgment on Misty Valley's statute of limitations defense and contention that the Easement benefited additional parcels. However, it granted the Sommers' motion for partial summary judgment, ruling that the Easement was appurtenant only to the real property expressly described in the Brent Saurey deed. The district court held that the Brent Saurey deed did not contain any ambiguity. Therefore, it declined to consider parole evidence offered by Misty Valley regarding the intent to benefit all three Saurey parcels with the Easement.

The Sommers filed a second motion for partial summary judgment in August 2019, asserting that Misty Valley's plan to use the Easement as illustrated in the preliminary plat was an impermissible expansion of the Easement. The Sommers also moved for extinguishment of the Easement. In its Amended Memorandum Decision on October 8, 2019, the district court granted

partial summary judgment for the Sommers, holding that "Misty Valley, LLC[,] may not use the [E]asement to allow unrestricted public access to the subdivision, as doing so would impermissibly and unlawfully expand the scope of the easement." However, the district court denied the Sommers' motion to terminate the Easement after determining there were genuine issues of material fact relating to the scope of any current or proposed future use of the Easement.

The district court subsequently held a bench trial to adjudicate the following unresolved issues: the Sommers' request for a declaratory judgment, injunctive relief, and termination of the Easement; and Misty Valley's quasi-estoppel and statute of limitation defenses. During the trial, the district court found that Misty Valley failed to supplement its discovery responses with text message communications between one of its witnesses, Terry Mortensen, and Jared Sommer occurring prior to December 6, 2017. The district court sanctioned Misty Valley for this violation by striking a portion of Mortensen's testimony concerning communications prior to that date.

On January 10, 2020, the district court issued its findings of fact and conclusions of law. The district court found that use of the Easement for access to the entire 152 lots in the subdivision as planned would result in an impermissible expansion of the Easement's use beyond the dominant estate (i.e., the Brent Saurey Parcel). However, the district court also found that if Misty Valley changed course, and the Brent Saurey Parcel was platted as a "stand-alone" subdivision with thirty lots or less (without connection to any other parts of the subdivision as illustrated in the preliminary plat), the use of the Easement would not be impermissibly expanded. The district court determined that the use of the Easement must be limited to access solely for the dominant estate (i.e., the Brent Saurey Parcel). The district court declined to extinguish the Easement or issue any injunctive relief. The district court also rejected Misty Valley's statute of limitations defense and quasi estoppel defense. The parties each timely appealed to this Court.

## II.     ANALYSIS

### A.  The district court did not err when it rejected Misty Valley's statute of limitations defense.

Misty Valley contends the district court erred when it rejected its statute of limitations defense. The district court held that the Sommers' declaratory judgment action was not time-barred by the four-year "catch-all" statute of limitations set forth in Idaho Code section 5-224 which states:

6

ACTIONS FOR OTHER RELIEF. An action for relief not hereinbefore provided for must be commenced within four (4) years after the cause of action shall have accrued.

I.C. § 5-224.

The parties do not dispute that this statute of limitations applies. The dispute centers on when the Sommers' cause of action "accrued" under this statute. If no disputed issue of material fact exists, the date when a cause of action accrues is a question of law. *C & G, Inc. v. Canyon Highway Dist. No. 4,* 139 Idaho 140, 143, 75 P.3d 194, 197 (2003).

The district court applied the accrual standard set forth in *Harris v. State, ex rel. Kempthorne*, 147 Idaho 401, 210 P.3d 86 (2009), an inverse condemnation case. The district court ruled: "The Court finds that although [the *Harris* case] dealt with condemnation, the analysis applies here in that the time of accrual is when 'the impairment, of such a degree and kind as to constitute a substantial interference with plaintiffs' property interest, became apparent.' " The district court concluded that the Sommers' predecessors in interest (the Saureys) may have been aware of Misty Valley's plans to develop a possible subdivision as early as 2007. However, the evidence did not show the same against the Sommers with enough certainty or particularity. It was not until Misty Valley filed the preliminary plat that the Sommers were put on notice of information specific enough to discern the degree and kind of substantial interference intended by Misty Valley. Thus, the Sommers' action against Misty Valley did not accrue until August 2017, when Misty Valley filed the preliminary plat. The Sommers filed the Complaint on August 22, 2018. Therefore, Misty Valley failed to establish a statute of limitations defense.

Misty Valley, relying on *Schneider v. Howe*, 142 Idaho 767, 772, 133 P.3d 1232, 1237 (2006), contends that a claim for declaratory judgment accrues when an "actual or justiciable controversy exists." It argues that the Sommers' cause of action accrued in August 2008 when there was a public hearing on Misty Valley's zone change application. Misty Valley's application included a conceptual map showing a 130-lot residential subdivision with an access road in the Easement area. Jared Sommer attended the public hearing and Brent Saurey submitted a letter in support of the zone change. Thus, Misty Valley contends that the Sommers and Saureys knew of the proposed use of the Easement in 2008, and the four-year period for filing a request for declaratory judgment ran long ago.

7

The Sommers, in contrast, argue the district court's ruling was correct, but contend the accrual standard set forth in *Brown v. Greenheart*, 157 Idaho 156, 162, 335 P.3d 1, 7 (2014), a quiet title action, should govern this dispute. In *Greenheart*, the Court held "[t]he cause of action for quiet title accrues where another person claims an interest in property 'adverse to' another." *Id*. They argue that Misty Valley claimed an interest in their property "adverse" to them in 2017, when Misty Valley sent a letter advising them that Misty Valley intended to build a fence and gates across the Easement. We agree with the Sommers and affirm the district court's decision.

To understand why the accrual standard set forth in *Brown v. Greenheart* applies, we begin with Idaho's adoption of the Uniform Declaratory Judgment Act in 1933. Ch. 70, § 1, 1933 Idaho Sess. Laws 113–15. The Act authorizes courts to declare rights, status, and other legal relations:

> Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

I.C. § 10-1201. The stated purpose of the Act is ". . . to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." I.C. § 10-1212. The Act expressly provides that it is remedial and is to be liberally construed and administered. *Id.* The Act also provides that it is to be interpreted to effectuate a goal of uniformity with the state and federal laws that govern declaratory judgments:

> This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of these [those] states which enact it, and to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees.

I.C. § 10-1215.

The Act itself does not contain an express statute of limitations. This makes sense since the Act does not create any new substantive rights, but rather, authorizes a form of relief. "The [Act] does not *create* any new rights, statuses, or legal relations. It applies only where such rights, statuses, or legal relations *already exist*." *Brooksby v. Geico Gen. Ins. Co.*, 153 Idaho 546, 548, 286 P.3d 182, 184 (2012) (emphasis original), *abrogated on other grounds by Tucker v. State*, 162 Idaho 11, 18, 394 P.3d 54, 61 (2017) (holding Idaho Rule of Civil Procedure 12(b)(1) governs justiciability challenges, not Rule 12(b)(6)).

8

The Utah Supreme Court explained this point in *Jenkins v. Swan*, 675 P.2d 1145 (Utah 1983) nearly forty years ago and judicial decisions of other states and the federal judiciary are in accord:

> The statutory creation of relief in the form of a declaratory judgment does not create a cause of action or grant jurisdiction to the court where it would not otherwise exist. The Utah Declaratory Judgment Statute merely authorizes a new form of relief, which in some cases will provide a fuller and more adequate remedy than that which existed under the common law. *Gray v. Defa*, 103 Utah 339, 135 P.2d 251 (1943).

*Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983); *see, e.g.*, *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) ("Additionally, the [Federal] Declaratory Judgments Act is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right. No such right exists here.") (citation omitted); *Greenbriar Grp., L.L.C. v. Haines*, 854 N.W.2d 46, 50–51 (Iowa Ct. App. 2014), *as amended* (Aug. 1, 2014); *Beahringer v. Page*, 789 N.E.2d 1216, 1223–24 (Ill. 2003); *Wilson v. Kelley*, 617 A.2d 433, 436 (Conn. 1992); *Builders Ass'n of N. Nev. City of Reno*, 776 P.2d 1234, 1234 (Nev. 1989); *State ex rel. Edmisten v. Tucker*, 323 S.E.2d 294, 308 (N.C. 1984); *Hodgdon v. Campbell*, 411 A.2d 667, 669 (Me. 1980); *Williams v. S. Bank of Norfolk*, 125 S.E.2d 803, 807 (Va. 1962); *Tietjens v. City of St. Louis*, 222 S.W.2d 70, 71–72 (Mo. 1949) (en banc).

Recognizing that a claim for declaratory judgment depends on existing substantive rights, courts examine the underlying substance of the claim to determine the applicable statute of limitations. The United States Court of Appeals for the Second Circuit held in *Luckenbach S. S. Co. v. United States* that limitations periods under the Federal Declaratory Judgment Act depend on the substantive claim, not the remedy*:*

> Declaratory relief is a mere procedural device by which various types of substantive claims may be vindicated. There are no statutes which provide that declaratory relief will be barred after a certain period of time. Limitations periods are applicable not to the form of relief but to the claim on which the relief is based.

312 F.2d 545, 548 (2d Cir. 1963).

Other federal circuits agree. *See, e.g.*, *Gilbert v. City of Cambridge*, 932 F.2d 51, 57–58 (1st Cir. 1991); *Algrant v. Evergreen Valley Nurseries Ltd. P'ship*, 126 F.3d 178, 184–85 (3d Cir. 1997); *New Amsterdam Cas. Co. v. Waller*, 301 F.2d 839, 844 (4th Cir. 1962); *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 667–68 (6th Cir. 1997);

*Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688–89 (9th Cir. 1993); *Clulow v. Oklahoma*, 700 F.2d 1291, 1302–03 (10th Cir. 1983).

The courts of multiple states also agree. *See, e.g.*, *Dehoff v. Att'y Gen.*, 564 S.W.2d 361, 363 (Tenn. 1978) ("Limitations statutes do not apply to declaratory judgment suits, as such, because a declaratory judgment action is a mere procedural device by which various types of substantive claims may be asserted. Accordingly, it is necessary to ascertain the nature of the substantive claims sought to be asserted in a declaratory judgment action in order to determine the appropriate statute of limitations."); *Maguire v. Hibernia Sav. & Loan Soc'y*, 146 P.2d 673, 680 (Cal. 1944); *Wilson v. Kelley*, 617 A.2d 433, 436–39 (Conn. 1992); *Grand Lodge of Iowa of the Indep. Order of Odd Fellows v. Osceola Lodge No. 18, Indep. Order of Odd Fellows*, 178 N.W.2d 362, 372 (Iowa 1970); *Taxpayers Allied for Constitutional Taxation v. Wayne Cnty.*, 537 N.W.2d 596, 601 (Mich. 1995); *Taylor v. Lovelace Clinic*, 432 P.2d 816, 818 (N.M. 1967); *Save the Pine Bush, Inc. v. City of Albany*, 512 N.E.2d 526, 529 (N.Y. 1987); *Dehoff v. Att'y Gen.*, 564 S.W.2d 361, 363 (Tenn. 1978); *Kappa Sigma Fraternity, Inc. v. Kappa Sigma Fraternity*, 587 S.E.2d 701, 707 (Va. 2003); *Weavewood, Inc. v. S & P Home Inv., LLC*, 821 N.W.2d 576, 580 (Minn. 2012).

The action filed by the Sommers is—in substance—an action to quiet title under Idaho Code section 6-401. Section 6-401 sets forth the cause of action:

> *An action may be brought by any person against another who claims an estate or interest in real or personal property adverse to him, for the purpose of determining such adverse claim*, provided that all actions to adjudicate water rights and obtain a decree as to water source, quantity, point of diversion, place of use, nature of use, period of use, and priority against other water users shall be brought under the provisions of chapter 14, title 42, Idaho Code.

I.C. § 6-401 (emphasis added). Except for the addition of "or personal" by amendment in 1937, and the exclusion of water rights, "this statute is the same now as it was when first adopted by the territorial legislature in 1881." *Anderson v. Whipple*, 71 Idaho 112, 121, 227 P.2d 351, 356 (1951), *overruled on other grounds by David Steed & Assocs., Inc. v. Young*, 115 Idaho 247, 766 P.2d 717 (1988).

Idaho abolished the distinction between disputes in equity versus law, entrusting our district courts with the power to settle real property disputes regardless of form. *Coleman v. Jaggers*, 12 Idaho 125, 131–32, 85 P. 894, 897–98 (1906); Idaho Const. art. V, §§ 1 and 20. Previously, equity's jurisdiction was strictly limited through the "old bill of peace" which required

a plaintiff, among other things, to first establish title in law before he or she could seek equitable relief to quiet title. *Coleman*, 12 Idaho at 130–31, 85 P. at 897–98; *Anderson*, 71 Idaho at 121, 227 P.2d at 356. Now free from formalistic relics, a plaintiff may, through the quiet title statute, "immediately, upon knowledge of such claim, require the nature and character of the adverse estate or interest to be produced, exposed and judicially determined, and the question of title be thus forever quieted." *Coleman*, 12 Idaho at 130–31, 85 P. at 896–97; *see also Bennet v. Bank of Eastern Oregon*, 167 Idaho 481, 493, n. 11, 472 P.3d 1125, 1137 n. 11 (2020) ("Statutes enlarging traditional quiet title actions are intended to afford an easy, fast, and efficient way to quiet title to real estate[.]" (quoting 65 Am. Jur. 2d *Quieting Title* § 7)). "It is a remedial statute supplementing, more than replacing, common-law and equity-based jurisprudence; hence, it should be broadly construed." *Bennet,* 167 Idaho at 493, 472 P.3d at 1137 (holding an expired judgment lien is redressible by a quiet title action).

The complaint filed by the Sommers seeks to settle the title, rights, and interests surrounding the Servient Parcel, Misty Valley's parcels, the Deed, and the Easement. The complaint begins with detailed allegations describing the land owned by the parties and the various land transfers that have occurred over the last twenty years. It alleges the creation of the Easement for the benefit of the Brent Saurey Parcel. It contains allegations related to the zone change that took place in 2008 and the positions taken by the parties. It also contains allegations describing Misty Valley's intention to use the Easement for purposes of erecting a fence to the planned residential subdivision and the Sommers' objection to that planned use. After laying out three pages of factual allegations that largely mirror the facts set forth in this opinion, the complaint then sets forth three counts: Count 1 – Declaratory Judgment; Count 2 – Termination of Easement; and Count 3 – Injunctive Relief. The prayer for relief requests judgment in several forms: a declaration that Misty Valley cannot expand the scope of the Easement to provide access to the planned subdivision; a declaration that the Easement is terminated; and injunctive relief prohibiting Misty Valley from entering the Easement to erect a fence or increasing the burden on the Sommers' parcel. Labeling Count 1 as "Declaratory Judgment" does not blind us to the quiet title action that has actually been pleaded.

Understanding that this is a quiet title action in substance, we can return to the parties' dispute over the statute of limitations. This Court previously held in *Brown v. Greenheart*, 157 Idaho 156, 162, 335 P.3d 1, 7 (2014), that the four-year statute of limitations set forth in Idaho

11

Code section 5-224, the statute the parties agree applies to this case, governs quiet title actions. The Court also addressed the accrual standard to be applied, holding "[t]he cause of action for quiet title accrues where another person claims an interest in property *'adverse to'* another." *Id.* (emphasis added). We agree with the Sommers that this is the accrual standard the district court should have applied.

Assuming the Sommers and the Saureys were put on notice in 2007 or 2008 of Misty Valley's intent to build a subdivision, this is not enough to trigger accrual under *Greenheart*. In *Greenheart*, accrual occurred when Greenheart claimed an interest in the Browns' water rights by filing a notice with the Idaho Department of Water Resources. *Greenheart*, 157 Idaho at 162, 335 P.3d at 7. This was the first point in time that Greenheart took an objective action with enough specificity to claim an interest "adverse to" Browns' water rights. *Id.* Here, between 2007 and 2008, Misty Valley communicated a general intent to build but did not take any objective action (e.g., filing with the appropriate government agency) to notice the Sommers or Saureys of any *particular* or *specifically* planned subdivision that utilized the Easement. Without this, the Sommers and Saureys could have no way of knowing in 2007 and 2008 whether Misty Valley's intended subdivision would come to fruition and if it did, whether it would be "adverse to" their interests.

Moreover, even the 2008 application for zone change did not constitute an "adverse" claim because approval of the change from "Agricultural" to "Trans-Ag 2" *permitted* subdividing of Misty Valley's property, but it was far from certain that subdividing *would* occur, let alone in a manner, or to an extent, that the subdivision would be "adverse to" the Sommers' or Saureys' property interests. The earliest possible date a quiet title action might have accrued was August 3, 2017, when Misty Valley filed its preliminary plat application. That application not only had a map showing the proposed use of the Easement, but also required actual plans to subdivide the property. The application required that the property developer include, among other things, engineered plans for streets, sewers, sidewalks, and other public improvements. Those documents do not appear to be part of the record. The latest the cause of action could have accrued was June 14, 2018, when Misty Valley sent the Sommers the letter advising them that they intended to erect a fence on the Easement area. We need not resolve which specific accrual date applies because the Sommers filed their complaint in August 2018, well within the four-year statute of limitations regardless of which date the cause of action arose. From this, it follows Misty Valley did not

12

establish a statute of limitations defense, and we affirm the district court's judgment that Idaho Code section 5-224 does not bar the Sommers' action.

To be clear, today's decision does not foreclose the ability of parties to bring claims for declaratory relief pursuant to Idaho Code section 10-1201 *prior* to the accrual of an underlying cause of action. The Uniform Declaratory Judgments Act, upon which the Idaho statutory scheme was modeled, explains in its "Reasons for [ ] Adoption" that the Act enables parties to take advantage of the declaratory judgment procedure before any wrong has been done or breach has been committed:

> In order to have recourse to and take advantage of the Declaratory Judgment procedure it is not requisite that any wrong should have been done or any breach committed. It is to prevent and forestall such happenings by a Declaratory Judgment setting forth rights and duties for the guidance of those concerned and indicating the course to be followed, that a remedy is provided by the Act, and thus litigation is avoided. The measure is not merely preventive, it is also interpretative. It concerns itself not only with contracts, but with wills and other instruments of writing, with matters of governmental regulation, such as ordinances and the like, with respect to titles to property, and particularly with the status of family relations, man and wife, parent and child, guardian and ward, and also with provisions of trust. In all such cases the Act will be found of benefit. Under the Act the courts will have power to declare rights, status and other legal relations whether or not further relief is or could be demanded and no judgment will be open to the objection that it will be declaratory. It will therefore be binding. In other words, before war is openly declared between parties the courts may decide that there is no occasion there-for. The Uniform Act permits the court to construe a contract either before or after a breach thereof.

Unif. Declaratory Judgments Act, *Prefatory Note*, 4 (1922) (https://www.uniformlaws.org/Higher Logic/System/DownloadDocumentFile.ashx?DocumentFileKey=153c6f5f-5946-9209-c153-a8f8 5e6fceef&forceDialog=0).

In other words, so long as the claim for declaratory relief is justiciable, it may be brought before the statute of limitations begins to run on an underlying cause of action. *See, e.g.*, *Schneider v. Howe*, 142 Idaho 767, 772, 133 P.3d 1232, 1232 (2006) (dealing with standing and ripeness). To illustrate, in this case, Idaho's Declaratory Judgment Act would have allowed Misty Valley, or the Sommers, to bring a declaratory judgment claim some time prior to August 3, 2017—the earliest date the Sommers' quiet title action could have accrued. Such a claim would be authorized by section 10-1201, so long as it presents a "case where an actual or justiciable controversy exists." *Harris v. Cassia Cnty.*, 106 Idaho 513, 516, 681 P.2d 988, 991 (1984). Thus, a claim for declaratory

13

relief brought in the period *prior* to accrual of the underlying cause of action is not subject to an applicable statute of limitations.

**B. The district court did not err in concluding that the Deed was unambiguous.**

Ruling from the bench, the district court granted the Sommers' first motion for partial summary judgment asking the court to hold that the Deed was unambiguous. Specifically, the district court concluded that the only reasonable interpretation of the Deed was that the Easement created in that instrument was for the benefit of (i.e., appurtenant to), the parcel of land conveyed by that instrument:

> [A]s to [Sommer's] motion for summary judgment, it's based entirely on what the deed says and whether or not there was any reason why I should consider anything but the four corners of the deed. By virtue of the fact that this is the deed that created the easement, if there was any other property that was going to be served by the easement, I would have expected it to appear in the deed. Instead, there's just a parcel of ground with a little chunk taken out of it, and then it says there's an easement for ingress and egress. I don't think there would be any logical reading of the deed that would suggest anything other than the fact that this easement is to this section of property, but it doesn't suggest in any way that there's additional land that would be covered by it. So based upon the state of the record before the Court today, I can't find that there is a genuine issue of material fact, and [it] does appear, based upon well-established Idaho real property law, that the scope of the easement is defined by the creating document, the deed, in the absence of any kind of ambiguity. **I don't find any ambiguity at this time**, and so therefore, there's no reason to consider the considerable parole evidence that was offered by [Misty Valley].

Whether an ambiguity exists in a legal instrument is an initial question of law, over which this Court exercises free review. *Knipe Land Co., v. Robertson*, 151 Idaho 449, 455, 259 P.3d 595, 601 (2011). "Ambiguity exists only if *language* of the conveyance instrument is subject to conflicting interpretations." *Neider v. Shaw*, 138 Idaho 503, 508, 65 P.3d 525, 530 (2003) (emphasis added). "There are two types of ambiguity, patent and latent." *Id*. "A patent ambiguity is an ambiguity clear from the face of the instrument in question." *Id*. "A latent ambiguity exists where an instrument is clear on its face, but loses that clarity when applied to the facts as they exist." *Id*. If the instrument is ambiguous, a court moves past the initial ambiguity question, and the interpretation of the deed becomes a question of fact determined by parole evidence of the facts and circumstances surrounding the property transaction. *Id*. Misty Valley maintains on appeal that the district court erred because the Deed is latently ambiguous as a matter of law. We affirm the district court's conclusion that the Deed is unambiguous.

14

In *Porcello v. Estate of Porcello*, we examined the core attributes of the latent ambiguity doctrine from a line of prior cases and articulated what we now dub the "tethered" test. 167 Idaho 412, 424, 470 P.3d 1221, 1233 (2020). Under this test, we explained that a latent ambiguity must be tied to the language of the instrument itself:

> [I]t is clear that a latent ambiguity in a contract must ultimately be **tied to the language of the instrument itself**. Latent ambiguities by nature only exist when the *instrument* is applied to the facts as they exist . . . In determining ambiguity, as articulated by Professor Williston, the court hears the proffer of the parties and determines if there are objective indicia that, from the parties' linguistic reference point, *the contract's terms* are susceptible of different meanings.

*Id.* (emphasis added) (citations and quotations omitted).

Based on this holding, there are two points of analysis when determining whether an instrument contains a latent ambiguity: first, we examine the language of the instrument, including other writings incorporated into the instrument; and second, we examine the reasonable alternative meanings suggested by the parties as to language *within* the instrument. *Id.* (quoting 11 Williston on Contracts § 30:5 (4th ed.)). We may consider extrinsic evidence of the structure of the instrument; the parties' relative positions and bargaining power; the parties' bargaining history; the party drafting the instrument; and "any conduct of the parties which reflects their understanding of the contract's meaning" to determine whether *language within the instrument* is reasonably susceptible of more than one meaning. *Id.*

The warranty deed from Brett and Patricia Saurey to the Duck Club created the Easement at issue. The Deed stated in relevant part:

> Lyle Brent Saurey also known as L. Brent Saurey and Patricia L. Saurey, Husband and Wife the grantor(s), do(es) hereby grant, bargain, sell and convey unto
> North Fork Duck Club, LLC
>
> Whose current address is PO Box 272, Bloomington, IN 47402
>
> The grantee(s), the following described premises in Madison County, Idaho, TO WIT:
>
> Parcel 1: The north 830 feet of the S ½ NE ¼ of Section 3, Township 6 North, Range 39 East, Boise Meridian, Madison County, Idaho, excepting therefrom the following parcel of land:
>
> The East 330 feet of the North 830 feet of the S ½ NE ¼ of Section 3, Township 6 North, Range 39 East, Boise Meridian, Madison County, Idaho.

15

Parcel 2: Together with an easement for ingress, egress and utilities described as follows: The North 60 feet of the East 330 feet of the North 830 feet of the S ½ NE ¼ of Section 3, Township 6 North, Range 39 East, Boise Meridian, Madison County, Idaho.

. . . .

Misty Valley argues the identity of the dominant estate to which the Easement is appurtenant is ambiguous. It points to the absence of any term that affirmatively restricts the dominant estate's identity to the Brent Saurey Parcel (Parcel 1 in the Deed). It also points to extrinsic evidence of the other Saurey family conveyances (Kerry Saurey Parcel and Saurey Trust Parcel) to the Duck Club made essentially at the same time the Brent Saurey Parcel was conveyed. The Sommers respond by denying that any ambiguity exists. In light of *Porcello*'s tethered test, Misty Valley's arguments are unavailing.

First, even when we assume, without deciding, that all three Saurey Family conveyances were part of the "same transaction" as Misty Valley contends, this does not establish a latent ambiguity within the Deed. There is nothing in the Deed's language—or the language of the Kerry Saurey and Saurey Trust conveyances if they are read within the same four corners as the Deed—to which a latent ambiguity may be tethered. The district court found the Deed contained only one conveyance of real property in fee simple—the Brent Saurey Parcel described in "Parcel 1." The language following the heading "Parcel 2" describes the Easement. Moreover, the Deed contains no language referencing some other parcel (e.g., Kerry Saurey Parcel or the Saurey Trust Parcel). Nor does the Deed include language granting an easement for the benefit of a "dominant estate" while failing to include *any* language that could reasonably identify it.

As the district court concluded, there is no ambiguity in the Deed. The Deed is not patently ambiguous because there is only one reasonable way to read the Deed: the Easement conveyed under "Parcel 2" is for the benefit of Parcel 1. There is no latent ambiguity because Misty Valley's extrinsic evidence of ambiguity cannot be tethered to any language within the Deed (or the other conveyances if we assume they were all part of the "same" transaction). Instead, contrary to *Porcello*, Misty Valley wholly relies on creating a latent ambiguity through extrinsic evidence—not the language in the Deed.

Next, Misty Valley argues that because the Deed does not expressly limit the scope of the dominant estate's identity by its terms, or expressly restrict the dominant estate as limited to the

16

property identified under "Parcel 1"—the Deed is latently ambiguous as to the full identity of the dominant estate. In other words, unless there is restrictive language, Misty Valley advances that it is open season on how many other parcels comprise the *full* identity of a dominant estate. Misty Valley points to *Christensen v. City of Pocatello,* 142 Idaho 132, 124 P.3d 1008 (2005), in support of its argument. Misty Valley's reliance on *Christensen* is misplaced.

In *Christensen*, we noted that where "the deed does not identify the dominant parcel served by the easement . . . the question of which parcel(s) the easement was intended to serve might be up for debate." 142 Idaho at 136–37, 124 P.3d at 1012–13 (declining to reach the issue because the City admitted in its answer the identity of the dominant estate). The deed in *Christensen* stated that the servient parcel was subject to an easement—but omitted *any* language identifying the dominant estate or any other parcel that could reasonably be interpreted as such. *Id*. Thus, the Court in *Christensen* only opened the "debate" as to a dominant estate's full identity where language identifying the dominant estate is entirely absent within the conveyance—not where there is an absence of language restricting the dominant estate to a parcel that is identified.

Here, unlike the debate alluded to in *Christensen* where the conveyance gave no hint as to what parcel is benefited, the Deed conveys the Brent Saurey Parcel "together with" the Easement—and no other real property. Thus, the Deed not only gives a hint as to what parcel is benefited by the Easement, the only reasonable reading of the Deed is that the Easement's benefit is appurtenant to the parcel the same instrument conveys—the Brent Saurey Parcel. *See Coward v. Hadley*, 150 Idaho 282, 287, 246 P.3d 391, 396 (2010) ("[E]xpress easements are presumed to be appurtenant . . . . An easement appurtenant is one whose benefits serve a parcel of land. More exactly, it serves the owner of that land in a way that cannot be separated from his rights in the land."). Thus, the "debate" *Christensen* alluded to is not applicable here. We decline to read in restrictive terms absent from the Deed's plain language. Doing so would invariably hollow out the rule against parole evidence and the tethered test in future cases.

In sum, we agree with the district court's conclusion of law that the Deed was unambiguous as to the dominant estate's identity. Even if we assumed that the Deed, the Kerry Saurey conveyance, and the Saurey Trust conveyance were part of the "same" transaction, no latent ambiguity over the identity of the dominant estate can be tied to the Deed's language as required by *Porcello*'s tethered test. Thus, we affirm the district court's grant of partial summary judgment identifying the dominant estate solely as the Brent Saurey Parcel.

17

In addition, because Misty Valley's argument on appeal as to the permissible use of the Easement turns on this Court determining the ambiguity question in Misty Valley's favor, we do not reach its merits. Thus, we affirm the district court's ruling limiting the Easement's use to benefit a residential development solely on the dominant estate—the Brent Saurey Parcel

### C. The district court abused its discretion in excluding testimony at trial, but this error was harmless because it did not affect Misty Valley's statute of limitations or quasi-estoppel defenses.

The district court struck a portion of Terry Mortensen's testimony at trial as a sanction for a discovery violation by Misty Valley. Terry Mortensen was Misty Valley's witness and was called to, among other things, testify about his conversations with the Saureys and Sommers starting in 2007 regarding Misty Valley's plan for a subdivision. The district court imposed the sanction after determining Misty Valley had failed to supplement its discovery responses with certain text messages between Mortensen and Jared Sommer that occurred prior to December 6, 2017. For the reasons discussed below, we conclude the district court abused its discretion because it did not act consistently with the legal standards applicable to the specific choices available to it. However, this error was harmless because it did not affect Misty Valley's statute of limitations or quasi-estoppel defenses.

Idaho Rule of Civil Procedure 26(e)(3) authorizes a trial court to exclude testimony or evidence as a sanction for a party's failure to supplement responses to discovery requests. "The imposition of discovery sanctions is within the discretion of the trial court and [the] Court will not overturn that decision absent a manifest abuse of discretion." *Farr v. Mischler*, 129 Idaho 201, 206, 923 P.2d 446, 451 (1996). "In determining whether the trial court abused its discretion in imposing a sanction for a discovery violation, [the Court] must first determine whether a discovery violation occurred." *Easterling v. Kendall*, 159 Idaho 902, 909, 367 P.3d 1214, 1221 (2016) (internal quotations omitted).

The Court will not overturn a trial court's determination that a discovery violation has occurred if it is supported by substantial and competent evidence. *State v. Stradley*, 127 Idaho 203, 207–08, 899 P.2d 416, 420–21 (1995). Substantial, competent evidence exists if there is evidence in the record that a reasonable trier of fact could accept, and rely upon, in making the factual finding challenged on appeal. *Caldwell Land and Cattle, LLC v. Johnson Thermal Systems, Inc.*, 165 Idaho 787, 795, 452 P.3d 809, 817 (2019). Finally, if there was an abuse of discretion, we

evaluate whether the error was harmless. *Brauner v. AHC of Boise, LLC*, 166 Idaho 398, 409, 459 P.3d 1246, 1260 (2019).

During the bench trial, the district court determined Misty Valley failed to supplement its discovery responses and the court made the decision to strike part of the Mortenson's testimony as a sanction:

> The court has before it a motion to strike testimony of the witness, Mr. Mortensen, based on a discovery sanction. I've considered the motion. I did look at the text messages that were provided in Exhibit 6. The court, in making this ruling, has to consider a few things. The first thing I look at is whether or not there has been any discovery violation, whether that's occurred or not, and then what's an appropriate remedy if the court finds there is a discovery violation. Some of this is governed by Rule of Civil Procedure 26. That indicates that if there is a failure to supplement, the court *may* exclude the testimony of any witness or the admission of evidence not disclosed by a supplementation. *It's required by the rule.*
>
> [The Sommers] asked that I strike the entire testimony of Mr. Mortensen. The court thinks that is a remedy that's not warranted here. I do think there was a requirement under the rule to supplement the discovery responses, in particular the request under Interrogatory No. 7 for these declarations. Mr. Mortensen clearly knew a lot about the project and other things.
>
> His testimony is not stricken in its entirety, but I will strike just those sections of his testimony as they relate to discussions with Jared Sommers that predate the text messages that were included in Exhibit 6. And the reason for that is, clearly, Mr. Mortensen had knowledge of that. He had those text messages available, and those should have been provided.

Misty Valley first argues the district court failed to perceive the issue of whether to strike Mortensen's testimony as one of discretion. Misty Valley points to the district court's statement that "[i]t's required by the rule" to argue the district court believed it had to strike the testimony. Misty Valley misapprehends the ruling.

In the sentence immediately before the statement Misty Valley relies upon, the district court correctly recognized the court "may" exclude testimony or evidence where there was a failure to supplement discovery. Reading the colloquy in full, the district court's use of the term "required" referred to a party's obligation to seasonably supplement discovery requests pursuant to Idaho Rule of Civil Procedure 26(e)(1)(C), not the court's authority to impose sanctions. Thus, the district court did perceive the issue of whether to strike some portion, or all, of Mortensen's testimony as one of discretion.

19

Next, Misty Valley argues the district court abused its discretion because "the record on appeal and trial transcript do not support that any discovery violation actually occurred." The discovery violation the district court found and used to support its decision to strike portions of Mortensen's testimony, was that Misty Valley failed to produce text messages exchanged between Mortensen and Jared Sommer prior to December 6, 2017. However, as Misty Valley points out, there is not substantial, competent evidence in the record that any text messages between Mortensen and Jared Sommer ever existed prior to December 6, 2017. On direct examination, Mortensen only testified to communications with Jared Sommer prior to December 6, 2017 by way of in person meetings or interactions at Planning & Zoning hearings—not text messages. The only texting Mortensen testified to started in December 2017—consistent with the text messages produced by Misty Valley in Exhibit 6. The Sommers' examination in aid of their discovery violation objection reveals nothing different. From this, it follows that there is not substantial evidence in the record of a failure to supplement by Misty Valley—rendering the district court's finding of a discovery violation without a factual basis. *See Stradley*, 127 Idaho at 207–08, 899 P.2d at 420–21. The decision of the district court to sanction Misty Valley without a factually supported discovery violation was inconsistent with the legal standards applicable to the specific choices available to it. As such, the district court abused its discretion.

Misty Valley argues on appeal that this abuse of discretion affected proper consideration of their statute of limitations and quasi-estoppel defenses in the district court's conclusions of law. We disagree. First, even when fully considered, the testimony in the record of Mortensen's communications with Jared Sommer from 2007 forward is not material to Misty Valley's statute of limitations defense. As discussed *supra*, the quiet title action did not accrue until at least August 3, 2017, when Misty Valley filed its preliminary plat, because the communications between Misty Valley and the Sommers prior to that filing did not provide concrete, non-speculative notice of the nature and extent of Misty Valley's intended interference with the Sommers' interests. Thus, the district court's error in excluding Mortensen's testimony of communications with Jared Sommer between 2007 and December 6, 2017, was harmless as Misty Valley cannot establish a statute of limitations defense even when this testimony is considered.

Second, the district court's error did not affect Misty Valley's quasi-estoppel defense for two reasons: (1) it was Misty Valley's duty to clarify at trial any confusion over what testimony the district court was striking and what it was still considering; and (2) the district court considered

all of Mortensen's testimony in rejecting Misty Valley's quasi-estoppel defense notwithstanding its prior ruling purporting to strike portions of it.

The district court did not reduce its ruling to writing to clarify exactly which sections of Mortensen's testimony it was striking. Instead, the district court set the line as striking "discussions with Jared Sommers" before December 6, 2017 (the date of the earliest text messages disclosed in Exhibit 6 during discovery). Misty Valley complains on appeal that it is unclear what was actually stricken versus what was considered by the district court when it rejected Misty Valley's quasi-estoppel defense. However, Misty Valley cannot now on appeal complain of confusion over what the district court did or did not strike when Misty Valley did not raise this issue with the district court. It was incumbent on Misty Valley to clarify the record for issues it wished to preserve for appeal. *See Profits Plus Capital Management, LLC v. Podesta*, 156 Idaho 873, 890, 332 P.3d 785, 802 (2014) ("It is the litigant's duty to not only clearly state its contentions to the trial judge, but to make such contentions, and the rulings thereon, of record so they may be reviewed on appeal.").

Furthermore, the district court's conclusions of law and record citations reveal the district court did not follow the parameters of its own sanction when concluding that Misty Valley failed to establish its defense of quasi-estoppel. In pertinent part, the district court's conclusion of law states:

> Evidence was presented at trial that the parties had discussed a proposed future development on several occasions in 2007. There is insufficient evidence to establish that as a result of the discussions the Sommers gained any advantage, caused any disadvantage to Misty Valley, or induced Misty Valley to change its position regarding the proposed development to the property. After those discussions, in 2011-2013, the property went through a foreclosure, sheriff's sale and subsequent redemption. With all of the intervening circumstances that occurred after the discussions, including the foreclosure and redemption of the property, Misty Valley has failed to show that those prior discussions were sufficient to establish quasi-estoppel.

Within this conclusion, the district court, in footnotes 49 and 50, cites to, and relies on, Mortensen's testimony as to his communications with Jared Sommer between 2007 and December 6, 2017—the same testimony the district court purported to strike as a discovery sanction. Moreover, the district court explicitly stated it considered evidence presented at trial of the parties' discussions in 2007 and concluded it was "insufficient." From this, it follows that the district court's error in sanctioning Misty Valley could not have affected its quasi-estoppel defense because the district court *did* consider Mortensen's testimony of what Jared Sommer knew or

21

represented to Misty Valley from 2007 forward—and still rejected Misty Valley's quasi-estoppel defense.

Even if we assume the district court's citations to Mortensen's purportedly stricken testimony were not evidence of reliance upon it, our review of the record affirms the district court's rejection of the quasi-estoppel defense. There is insufficient evidence to establish that the Sommers changed positions, gained an advantage, or caused a disadvantage to Misty Valley. There is insufficient evidence to establish that the Sommers induced Misty Valley to change its position regarding its proposed development or that the Sommers derived a benefit from, or acquiesced in, Misty Valley's proposed development. *See Trumble v. Farm Bureau Mut. Ins. Co. of Idaho*, 166 Idaho 132, 136, 456 P.3d 201, 215 (2019) (listing the elements of a quasi-estoppel defense).

In sum, the district court abused its discretion in sanctioning Misty Valley without the support of substantial, competent evidence in the record of a discovery violation. However, the district court's error was harmless because it did not affect Misty Valley's statute of limitations or quasi-estoppel defenses. Thus, we affirm.

**D. The district court properly declined to extinguish or terminate the Easement.**

On cross-appeal, the Sommers argue that the district court erred as a matter of law in relying on *Gray v. Gore*, 119 Idaho 425, 807 P.2d 643 (1991), to deny the Sommers' request for termination of the Easement. The Sommers advocate for the adoption of the easement termination rule fashioned by a California District Court of Appeal in *Crimmins v. Gould*, 308 P.2d 786 (Cal. Dist. Ct. App. 1957). Here, even if we were to adopt the rule in *Crimmins*, the Sommers do not prevail. Thus, we affirm the district court's refusal to terminate the Easement.

In *Crimmins*, a California appellate court evaluated the propriety of extinguishing an easement as a remedy. 308 P.2d at 791. The court noted "[t]he general rule is that misuse or excessive use is not sufficient for abandonment or forfeiture, but an injunction is the proper remedy." *Id.* (citing 16 A.L.R.2d 610 (1951)). *Crimmins* detailed that the defendants did not merely subdivide the dominant estate and increase the use of the private easement as to that parcel. Instead, under the particular character of adjoining parcels, defendants had permanently extended use of the private easement to a second parcel with no rights to the easement, and extended the private easement into two public streets. *Id.* Ultimately, the *Crimmins* court announced the rule that if "the burden of the servient estate is increased through changes in the dominant estate which increase the use and subject it to use of non-dominant property, a forfeiture will be justified *if the*

22

*unauthorized use may not be severed and prohibited*." *Id*. (emphasis added). Thus, the court in *Crimmins* determined forfeiture was appropriate because the character of the parcels paired to the defendant's multiple unlawful extensions of the easement made it impossible to sever the misuse and return the easement to its intended private nature. *Id*.

Here, the district court declined to terminate the Easement because of the future use restrictions it imposed:

> The Sommers have sought the remedy of termination of the Easement. An easement "should only be terminated as a last resort and only if there is no viable alternative to prevent misuse or overuse because the Supreme Court has made it clear that there is a strong preference against forfeiture." *Gray v. Gore,* 119 Idaho 425 426, 807 P.2d 643, 644 (1991). With the Court's holding that future use consistent with the restrictions defined herein is permitted, the facts in this case do not support the extreme remedy of termination of the Easement. As such, the Sommers' request for termination of the Easement is denied.

Before turning to application of *Crimmins*, we note the district court misquoted *Gray v. Gore*, 119 Idaho 425, 426, 807 P.2d 643, 644 (1991). The district court quoted *Gray* as stating that "[an easement] should only be terminated as a last resort and only if there is no viable alternative to prevent misuse or overuse because the Supreme Court has made it clear that there is a strong preference against forfeiture." *Gray* does not contain this quote. *See Gray*, 119 Idaho at 426, 807 P.2d at 644. In *Gray*, we held that an automatic easement forfeiture clause in a court order that itself created the easement was not enforceable. *Id*. We noted Idaho's strong preference against forfeitures and explained that even when there is a written agreement between parties for forfeiture upon abuse of an easement's restrictions, such an agreement will "not be honored in order to avoid unconscionable results." *Id*. Thus, the district court correctly discerned that *Gray* stands for the proposition that Idaho disdains forfeitures. *See also Stringer v. Swanstrum*, 66 Idaho 752, 760, 168 P.2d 826, 830 (1946) ("Equity abhors forfeitures."); *Hurst v. Idaho-Iowa Lateral & Reservoir Co.*, 42 Idaho 436, 442, 246 P. 23, 25 (1926) ("The courts abhor a forfeiture, and, where no public interest is favored thereby, equity leans against declaring a forfeiture."); *Abercrombie v. Stoddard*, 39 Idaho 146, 158, 228 P. 232, 235 (1924) ("Forfeitures are not favored in law or equity . . . . Courts are reluctant to declare and enforce a forfeiture if by reasonable interpretation it can be avoided.").

Turning to *Crimmins*, the district court concluded injury to the Sommers is only "threatened" at this time because the proposed subdivision is still in the planning phase. Moreover,

it determined that a new plat could be prepared for a stand-alone subdivision on the Brent Saurey Parcel to ensure the Easement was not subject to an unlawful use or burden. Finally, the district court determined there is no actual, or ongoing, unlawful use of the Easement, let alone a permanent change in the dominant estate such that misuse of the Easement is impossible to sever. Again, the *Crimmins* rule permits forfeiture or termination of an easement only "if the unauthorized use may not be severed and prohibited." 308 P.2d at 791. Based on the district court's findings and conclusions, there simply is no evidence to support that type of finding.

Finally, the Sommers argue the Easement should be terminated because it has no permissible use based on Misty Valley's planned subdivision. The Sommers' argument fails to account for the fact that the Easement here is a written easement, by grant, appurtenant to the Brent Saurey Parcel owned by Misty Valley. The Court has long held that mere non-use of an easement by grant does not establish abandonment. *Quinn v. Stone*, 75 Idaho 243, 250, 270 P.2d 825, 832 (1954); *Kolouch v. Kramer*, 120 Idaho 65, 67, 813 P.2d 876, 878 (1991). Thus, even if Misty Valley never uses the Easement, it will not result in abandonment without more.

In sum, we affirm the district court's refusal to terminate the Easement. Because the Sommers have not prevailed in demonstrating grounds for termination of the Easement under *Crimmins*, it is not necessary to reach Misty Valley's arguments in response to the Sommers on this issue.

### E. The district court did not abuse its discretion in determining the Sommers were not the prevailing party below.

After the district court issued its findings of fact and conclusions of law, the Sommers filed a motion for costs pursuant to Idaho Rule of Civil Procedure 54(d)(1) and Idaho Code section 10-1210, contending they were the prevailing party. Misty Valley responded with a motion to disallow the Sommers' request for costs—arguing that neither party was the overall prevailing party. The district court denied the Sommers' motion. The Sommers cross-appeal the denial here.

Before costs at trial may be awarded, the trial court must determine which party, if any, is the prevailing party. I.R.C.P. 54(d)(1).

> In determining which party to an action is a prevailing party and entitled to costs, the trial court must, in its sound discretion, consider the final judgment or result of the action in relation to the relief sought by the respective parties. The trial court may determine that a party to an action prevailed in party and did not prevail in part, and on so finding may apportion the costs between and among the parties in a

24

fair and equitable manner after considering all of the issues and claims involved in the action and the resulting judgment or judgments obtained.

I.R.C.P. 54(d)(1)(B).

"The determination of prevailing party status is committed to the sound discretion of the district court and will not be disturbed absent an abuse of that discretion." *Jorgensen v. Coppedge*, 148 Idaho 536, 538, 224 P.3d 1125, 1127 (2010). The four-part abuse of discretion standard from *Lunneborg* applies here and is set out *supra*. *See Lunneborg*, 163 Idaho at 863, 421 P.3d at 195.

In previous cases, the Court has affirmed the decision of the district court denying prevailing party status where the district court appropriately weighed the Rule 54(d) factors, looked at the overall view or result of the action, and reached a conclusion through the exercise of reason. *See, e.g.*, *Israel v. Leachman*, 139 Idaho 24, 27, 72 P.3d 854, 867 (2003) (affirming the district court's decision to not award attorney fees where the district court determined both parties prevailed in part); *Trilogy Network Systems, Inc. v. Johnson*, 144 Idaho 844, 847–48, 172 P.3d, 112–23 (2007) (affirming the district court's decision that the plaintiff was not the prevailing party where the plaintiff succeed on its breach of contract claim but failed to prove damages); *Jorgensen*, 148 Idaho at 539, 224 P.3d at 1128 (affirming the district court's decision that no party was the prevailing party where one party succeed on its breach of contract claim and the other successfully defended against a fraud claim).

Here, the Sommers contend that the district court abused its discretion when it denied them prevailing party status. The Sommers argue Misty Valley asserted five affirmative defenses, none of which Misty Valley prevailed upon (failure to state a claim, statute of limitations under section 5-224, quasi-estoppel, unclean hands, and consent to expansion of the easement). While the Sommers are correct that Misty Valley did not succeed on these defenses, their argument ignores that Misty Valley did succeed, as Misty Valley argues in response, in defending against the Sommers' request for injunctive relief and termination of the Easement. From this, the district court concluded that neither party was the prevailing party under Rule 54(d) as each prevailed in part.

However, the Sommers take issue with the district court's use of the term "affirmative defenses" within its decision denying their motion for costs:

> [the] Sommers [were] successful in obtaining judgment defining a restricted us[e] of the easement as compared to Misty Valley's proposed use, the easement remains

25

and was not terminated. Thus[,] Misty Valley prevailed in its affirmative defenses as well.

The district court's use of the word "affirmative" before the word "defenses" unfortunately confuses the matter, as Misty Valley did not prevail on any "affirmative" defenses as the Sommers correctly point out. However, the underlying substance of the district court's reasoning still rests on its determination that Misty Valley prevailed in part because it successfully defended against two of the Sommers' requested forms of relief (injunction and termination). As Misty Valley prevailed in part below, the Sommers also only prevailed in part. The Sommers present no argument as to why this case is different from *Israel*, *Trilogy Network Systems, Inc.*, or *Jorgensen*, where the Court affirmed the trial courts' discretion to deny prevailing party status after the trial court properly determined a party prevailed only in part. Thus, the district court did not abuse its discretion in denying prevailing party status to the Sommers and we affirm.

### F.  Attorney fees and costs on appeal are denied for both parties.

Finally, both the Sommers and Misty Valley assert they are entitled to an award of costs and attorney fees in this appeal and cross-appeal pursuant to Idaho Appellate Rules 40 and 41, and Idaho Code section 12-121. Given the mixed results in this case, neither party is the prevailing party on appeal, thus, we deny fees and costs to both parties.

## V. CONCLUSION

We affirm the district court's judgment. We deny costs and attorney fees on appeal to both parties.

Chief Justice BEVAN, Justices STEGNER and ZAHN, and Justice Pro Tem TINGEY, CONCUR.