**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50864**

| | | |
|---|---|---|
| GRANT A. LIPPS and DEBORAH J. LIPPS, Husband and Wife, | ) ) ) | Filed: May 21, 2024 |
| Plaintiffs-Appellants, | ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) | THIS IS AN UNPUBLISHED |
| KEVIN NYE and JULIE NYE, Husband and Wife; and LAWRENCE F. NOLAN and KATHLEEN D. NOLAN, Husband and Wife, | ) ) ) ) ) | OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Defendants-Respondents, | ) ) | |
| and | ) ) | |
| DOES 1-10, | ) ) | |
| Defendants. | ) ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Susie Jensen, District Judge.

Judgment granting summary judgment, <u>affirmed</u>.

Bristol George Real Estate and Construction Lawyers; J.D. Bristol and Gregory M. George, Coeur d'Alene, for appellants. J.D. Bristol argued.

J.T. Diehl, Sandpoint, for Nye respondents. J.T. Diehl argued.

Finney, Finney & Finney, P.A.; John A. Finney, Sandpoint, for Nolan respondents. John A. Finney argued.

_____

HUSKEY, Judge

Grant A. Lipps and Deborah J. Lipps appeal from the district court's grant of summary judgment in favor of Lawrence F. Nolan and Kathleen D. Nolan and in favor of Kevin Nye and Julie Nye. The Lipps argue the district court erred in granting summary judgment on their claim

1

of misrepresentation in favor of the Nolans because the court relied on untimely provided supplemental discovery responses in concluding there was no genuine issue of material fact. The Lipps further appeal from the denial of the motion to reconsider the award of attorney fees on the misrepresentation claim, arguing the claim was not pursued frivolously. The Lipps argue the district court erred in granting summary judgment in favor of the Nyes and concluding there was no implied easement. The Nolans argue the supplemental discovery responses were timely provided and properly considered but regardless, the Lipps failed to plead misrepresentation or fraud with particularity and evidentiary support. The Nyes joined the Nolans in arguing the supplemental discovery responses were timely filed and properly considered. The Nyes also argue the district court correctly determined there was no implied easement and the road maintenance agreement did not create a covenant. The Nolans and Nyes request an award of attorney fees on appeal. We affirm the decision of the district court.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

The properties at issue are two lots in Bonner County. Originally, the two lots were aligned on a north/south axis, with Lot 1 bounded by Hawkins Road on the east. Both lots were bounded on their southern twenty feet by a private road easement, known as Chickaree Lane. In 1995, the lots were replatted to run from a north/south orientation to an east/west orientation and were labeled as Lot 1A and Lot 2A.[1] Following the replat, Lot 2A is adjacent to and north of Lot 1A; both lots are bounded on the east by Hawkins Road, but Chickaree Lane runs along the entirety of only Lot 1A's southern border and does not border Lot 2A. An unmaintained private dirt road starts at Chickaree Lane and runs through Lot 1A to Lot 2A. The water meter for Lot 2A is located at the junction of the southern border of Lot 1A and Chickaree Lane and is accessible via Chickaree Lane.

When the lots were replatted in 1995, both Lots 1A and 2A were owned by Otto and Peggy Sangders, who constructed a residence on Lot 2A and used Chickaree Lane to access the property during construction by crossing Lot 1A on the dirt road. When construction was nearly complete, the Sangders installed a formal driveway on Lot 2A with direct access onto Hawkins Road and no longer utilized the dirt road across Lot 1A for ingress and egress to Lot 2A. The Sangders entered

---

[1]     The third lot was retained by the seller and is not at issue in this appeal.

2

into a shared road maintenance agreement with other lot owners bordering Chickaree Lane for the care and maintenance of Chickaree Lane. In the road maintenance agreement, Lots 1A and 2A are granted an "[e]asement for ingress and egress over, under and across the South twenty (20) feet of Lot 1A, Lot 4A and Lot 5A, Block 4 of Lakeside Place Replats in Bonner County, Idaho." The Sangders subsequently sold Lots 1A and 2A to the Nolans in two separate transactions between 2005-2006. The Nolans sold Lot 2A to the Lipps in 2019. The real estate listing for the property indicated there was a circular driveway but no easements associated with the property. The Nolans sold Lot 1A to the Nyes in 2021.

In 2021, a dispute arose regarding whether the Lipps had rightful access across Lot 1A to Lot 2A by means of an implied easement or, alternatively, from an easement created by the road maintenance agreement signed by the Sangders. In response to the dispute, the Nyes blocked the dirt road on Lot 1A at the property line between Lots 1A and 2A. The Lipps filed a complaint seeking to affirmatively establish a right of access from Chickaree Lane across Lot 1A to Lot 2A. The complaint alleged five causes of action. Four of the claims were against the Nyes: (1) a quiet title/declaratory judgment based on the Chickaree Road maintenance agreement giving the Lipps access across Lot 1A; (2) an express easement across Lot 1A based on the road maintenance agreement; (3) a claim of implied easement across Lot 1A; and (4) a trespass claim involving the sewer line that ran across Lot 2A. The Lipps alleged one claim of misrepresentation against the Nolans based on the real estate listing for Lot 2A at the time the Lipps purchased Lot 2A, as having a "circular driveway," which the Lipps alleged was the private road across Lot 1A. The Nolans filed a response to the complaint. The Nyes answered and filed a counterclaim seeking quiet title to any easement claimed by the Lipps and for the sewer line.

The district court entered a pretrial order on December 14, 2021, setting trial for April 2023 and setting discovery deadlines. The notice of the first set of discovery requests was served in January 2022. In November 2022, the Nyes filed a motion for summary judgment, which the Nolans joined; the hearing was set for December 8, 2022. On November 28, 2022, the Lipps filed a motion to compel discovery regarding a deposition and a motion for an order shortening time.[2]

---

[2] The dispute regarding the deposition arose during the deposition of Lawrence Nolan and involved whether one attorney or multiple attorneys could question the deponent. The deposition was terminated until the dispute was resolved.

In the motion shortening time, the Lipps specifically noted that "discovery in the case has not been completed" and asked the court to either deny or continue the summary judgment hearing.

On November 30, 2022, the Nolans informally served both of the Lipps' counsel by providing a copy of an email exchange between Nancy Dooley, the real estate agent for the Nolans at the time they sold the property to the Lipps, and the Lipps' agent, Dawn Meyer. In the email exchange, on June 26, 2019, Meyer asked Dooley: "Any documents regarding the driveway on the property [the Nolans] will continue to own, will it be an easement for [the Lipps]?" Dooley did not respond before Meyer sent another email on June 30 that read, "Also, to clarify the inquiry regarding the circular driveway property. [The Lipps] are not interested in an easement, I am providing them with the official property lines regarding plans too [sic] have a gate on their property to prevent 'drive thru' vehicles from entering via Chikaree." Dooley responded later that day: "Of course whatever [the Lipps] want to do on their property is fine--like put up a gate. No-one has ever come down that driveway however. They may find there is no reason to bother with a gate."

A hearing was held on December 8, 2022, on the dispute regarding Lawrence Nolan's deposition and on the summary judgment motions. The district court ruled that during the remainder of Lawrence Nolan's deposition, both Lipps' attorneys could question Nolan. At the hearing, the Lipps' counsel stated:

> But I--if I can be candid and step out of my adversarial roles as far as the evidence that I have obtained so far, I wouldn't even try to go to trial on fraud. I think there is a valid active misrepresentation claim based on the evidence that we have.

The district court clarified that the elements on a misrepresentation claim were the same elements for a fraud claim. The court continued the summary judgment hearing to January 19, 2023, to give the Lipps time to complete depositions; ordered "Supplemental briefing and responses are permitted and must be filed and served pursuant to Rule 56"; and extended the discovery deadlines until January 5, 2023, for the Lipps and until January 12, 2023, for the Nyes and Nolans.

The emails between the agents were formally disclosed on December 13, 2022, in a supplemental discovery response. On December 20, 2022, the Nolans also filed an affidavit of Nancy Dooley, the real estate agent for the Nolans at the time they sold the property to the Lipps and attached copies of the email exchange between Dooley and Meyer. Therein, Dooley indicated that the real estate listing for the property on Lot 2A included a description with "A detached garage, adjacent carport, circular drive with plenty of parking and . . . ." Dooley averred: (1) "At

4

the time I prepared the information [for the listing], there was sufficient room on Lot 2A to enter from 70 Hawkins Road, turn around in a circle, and exit at 70 Hawkins Road"; (2) there was no provision in the accepted offer from the Lipps for an easement across Lot 1A; and (3) the copies of emails between herself and Dawn Meyer were true and correct. The Lipps filed a motion for summary judgment, amended responses to the defendants' motions for summary judgment, and additional affidavits. In that summary judgment motion, the Lipps alleged a new claim: that the Chickaree Lane road maintenance agreement created a covenant running with the land, giving Lot 2A a perpetual right to cross Lot 1A. The Lipps filed a motion to strike the Dooley affidavit and requested leave from the court to file an amended complaint.

On the morning of January 19, 2023, before the time set for the summary judgment hearing, the Lipps filed a declaration of Dawn Meyer. Therein, Meyer averred that she worked at a different real estate company at the time the Lipps purchased Lot 2A but that "[c]ommunications" from that company had been forwarded to an email address she could access, and she could not find the emails between herself and Dooley on June 30, 2019, that were attached to the Dooley affidavit.

At the summary judgment hearing, the Lipps withdrew their claim of express easement across Lot 1A and the claim of trespass regarding the sewer line but maintained their claim regarding a covenant created by the road maintenance agreement. The Lipps moved to strike the Dooley affidavit and attachments because it was untimely filed and because it contained inadmissible hearsay.[3]

Following the hearing, the district court issued a written ruling, granting summary judgment in favor of the Nolans and the Nyes. The district court deferred ruling on the request for leave to file an amended complaint. Because the court had not granted the Lipps leave to amend their complaint, the court considered only the claims in the initial complaint at summary judgment. In its written order, the district court addressed all the claims regarding the motions to strike various affidavits. As to the Dooley affidavit, the district court noted the parties appeared at the December 8, 2022, hearing and then held:

> The [Lipps] filed a motion, pursuant to IRCP 56(d) for time to take additional discovery. The court granted the motion, continued the hearing, and gave the [Lipps] until January 5, 2023, and the [Nolans and the Nyes] until January 12, 2023, to file any additional pleadings. The Dooley Affidavit was filed on December 20,

---

[3] A few days later, the Lipps filed a formal motion to strike Dooley's affidavit and objected to its admissibility.

2022, well within the time frame provided. The court finds the Dooley affidavit was timely filed.

The district court further held the emails attached to the Dooley affidavit were not hearsay, citing Idaho Rule of Evidence 801(d)(2)(D). As to the substantive claims, the district court found: (1) there was no implied easement from Chickaree Lane across Lot 1A for the benefit of Lot 2A; (2) the Chickaree Road maintenance agreement did not give Lot 2A a permanent right-of-way across Lot 1A; (3) the Lipps withdrew their claim of express easement; (4) the Lipps claim of misrepresentation failed as a matter of law because they had not established all nine elements of a misrepresentation claim, specifically, the Lipps were unaware that the representation was false or that they justifiably relied on it; and there was no genuine issue of material fact because the Lipps were fully aware at the time of purchase that any circular driveway did not include access across Lot 1A. The district court awarded fees and costs to the Nolans and costs to the Nyes.

The Nyes filed a motion for reconsideration asking the district court to address the issue of an easement in favor of the Nyes regarding the sewer line and for corrections to the court's decision and order. The Lipps also filed a motion for reconsideration and alternatively for an amendment of judgment or relief from judgment or order. The Lipps' motion explicitly did not request reconsideration of the summary dismissal of the misrepresentation claim, but only of the district court's determination that the claim was pursued frivolously, unreasonably, and without foundation for the purpose of awarding attorney fees. The basis for reconsideration was the district court's reliance on the Dooley affidavit and attached emails. The Lipps argued the Dooley affidavit and attached emails were disclosed late and, as a result, the Lipps had no meaningful opportunity to "vet" or challenge the emails. The Lipps also argued the Dooley emails should not be considered because they were served on only one of the Lipps' attorneys, instead of both, and that the unserved counsel was unaware of the Dooley affidavit until he was served with and reviewed the supplemental brief just prior to the hearing. The Lipps alleged that because the court relied on improper evidence, it erroneously concluded the misrepresentation claim was pursued frivolously and, thus, the award of attorney fees should be vacated. Alternatively, the Lipps argued the award of attorney fees should be limited to awarding fees only for the time after the email was disclosed. The Lipps then filed a declaration of Deborah Lipps, wherein she claimed she was unaware of the email exchange between Dooley and Meyer, she never authorized Meyer to inquire about an easement, and neither Lipps nor her husband ever desired to put up a gate or expressed such desire to a third party.

The Lipps also filed a motion to disallow costs requested by the Nolans on the grounds that some time entries were duplicative, excessive, unrelated to the misrepresentation claim, or related to settlement conferences. The district court held a hearing to address the motions, holding the Lipps withdrew their trespass claim against Nyes regarding the sewer line at the summary judgment hearing; the Nyes were entitled to quiet title regarding the sewer line easement; and affirmed the award of attorney fees to the Nolans. The Lipps timely appeal.

## II.

## STANDARD OF REVIEW

"In an appeal from an order granting summary judgment, the Court applies the same standard of review as that used by the district court when originally ruling on the motion." *Potlatch Corp. v. United States*, 134 Idaho 916, 919, 12 P.3d 1260, 1263 (2000). "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "The determination is to be based on the pleadings, depositions, and admissions on file, together with the affidavits, if any." *Potlatch Corp.*, 134 Idaho at 919, 12 P.3d at 1263. When the district court is the trier of fact, it is entitled to arrive at the most probable inferences based upon the evidence properly before it. *P.O. Ventures, Inc. v. Loucks Family Irrevocable Tr.*, 144 Idaho 233, 237, 159 P.3d 870, 874 (2007). "All disputed facts are to be construed liberally in favor of the nonmoving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party." *Foster v. Traul*, 145 Idaho 24, 28, 175 P.3d 186, 190 (2007).

"This Court exercises free review over the entire record that was before the district judge to determine whether either side was entitled to judgment as a matter of law and reviews the inferences drawn by the district judge to determine whether the record reasonably supports those inferences." *P.O. Ventures, Inc.*, 144 Idaho at 237, 159 P.3d at 874. Idaho Rules of Civil Procedure apply in all actions "of a civil nature," with some exceptions that are not relevant here. I.R.C.P. 1(b). Rule 11.2(b) permits a party to move the court to reconsider an interlocutory order. When considering whether to grant or deny a motion to reconsider, the court should apply the same standard as it did in considering the original motion. *Westby v. Schaefer*, 157 Idaho 616, 621, 338 P.3d 1220, 1225 (2014). When reviewing a trial court's decision to grant or deny a motion for reconsideration, this Court utilizes the same standard of review used by the lower court in deciding

the motion for reconsideration. *Westover v. Idaho Ctys. Risk Mgmt. Program*, 164 Idaho 385, 391, 430 P.3d 1284, 1290 (2018).

**III.**

**ANALYSIS**

The Lipps allege the district court erred by considering evidence disclosed after the filing of the summary judgment motion and not provided during the initial discovery disclosures, in violation of I.R.C.P. 26(f). The Lipps argue the district court's consideration of the improperly disclosed evidence resulted in the court granting the Nolans' summary judgment motion and imposing attorney fees. The Lipps further allege the district court erred in granting summary judgment to the Nye's and finding an implied easement did not exist because the historical use of the road demonstrated that when the Sangders replatted the lots and constructed a home on Lot 2A, the Sangders used the dirt road as ingress and egress across Lot 1A, faced the garage towards Chickaree Lane, and continued to use the road to access Chickaree Lane even after the formal driveway accessing Hawkins Road was created. Finally, the Lipps allege the district court failed to correctly consider the historic use and geographic location of the dirt road when interpreting the road maintenance agreement.

The Nolans argue the Lipps failed to plead fraud or misrepresentation with particularity and failed to support the claim with any evidence and therefore, attorney fees were appropriately granted to the Nolans. The Nyes contend the Dooley affidavit was timely disclosed during the extended discovery period and, thus, was properly considered by the district court. The Nyes further contend the Lipps failed to establish the elements of an implied easement by prior use because at the time the Nolans severed Lots 1A and 2A, there was no intent to burden Lot 1A with an easement for the benefit of Lot 2A and there was no reasonable necessity to create an easement. Finally, the Nyes argue the road maintenance agreement does not create a covenant between Lots 1A and 2A. The Nolans and Nyes request attorney fees on appeal.

**A.     The Dooley Affidavit and Attached E-mails Were Timely Filed and Properly Considered**

On appeal, the Lipps assert the Nolans failed to disclose the Dooley affidavit as required in the response to the first set of discovery requests pursuant to I.R.C.P. 26(f) and the district court erred by admitting and relying on the evidence. The Lipps assert multiple reasons why the court erred in relying on the evidence: (1) the emails and affidavit were not timely disclosed pursuant to I.R.C.P. 37(c); (2) the district court erroneously ruled in the motion to reconsider that the Lipps

8

were required to move to strike the affidavit pursuant to I.R.C.P. 37(c)(1); (3) arguments and evidence relied upon for the first time in a reply brief should not be considered in ruling on a dispositive motion; and (4) only one of the Lipps' attorneys was served, therefore, failure to comply with the notice requirements should result in the evidence being stricken. The Nolans argued the supplemental discovery responses were timely as explicitly permitted through the discovery deadline extension granted by the district court, and the court properly relied on the responses in reaching a decision on the summary judgment motion.

### 1. Timeliness

Idaho Rule of Civil Procedure 26(f) requires that every discovery request, response, or objection is signed and certified that after a reasonable inquiry, the statement of fact is complete and correct at the time the statement is made. Parties have an obligation to supplement discovery responses if a material aspect of the response or disclosure was "incorrect when made or, if correct when made, is no longer true and a failure to amend the response is in substance a knowing concealment" or by an order of the court. I.R.C.P. 26(e). Idaho Rule of Civil Procedure 26(e)(3) authorizes a trial court to exclude testimony or evidence as a sanction for a party's failure to supplement responses to discovery requests as required by the rule. "The imposition of discovery sanctions is within the discretion of the trial court and [the] Court will not overturn that decision absent a manifest abuse of discretion." *Sommer v. Misty Valley, LLC*, 170 Idaho 413, 427, 511 P.3d 833, 847 (2021) (quoting *Farr v. Mischler*, 129 Idaho 201, 206, 923 P.2d 446, 451 (1996)). The trial court is authorized to impose sanctions under I.R.C.P. 37(c)(1) if a party fails to disclose or supplement discovery responses when required or fails to comply with a court-ordered disclosure.

For purposes of discovery, the district court sets the deadlines for completing discovery and can also modify those deadlines upon either a showing of good cause or by stipulation of the parties and then approval by the court. I.R.C.P. 16(a)(2)(B) and (3). Here, the Lipps filed a motion to compel discovery and allow them to obtain and provide additional evidence to support their claims. At the December 8, 2022, hearing, the parties stipulated to extending the discovery deadlines and the district court approved the new deadlines. In its written order granting the Lipps' request to extend the discovery deadlines, the court gave the Lipps until January 5, 2023, to submit additional pleadings and the Nolans and Nyes until January 12, 2023, to submit any additional pleadings. The Lipps filed additional discovery, including the Declaration of Russ Leslie. The

9

Nolans also filed additional discovery, specifically, copies of the emails on December 13, 2022, and the Dooley affidavit on December 20, 2022. All parties filed the additional discovery well within the new deadlines.

The Idaho Rules of Civil Procedure require discovery responses to be supplemented if new or additional information comes to light after initial responses and answers are provided and provides correction or clarification to an initial disclosure. I.R.C.P. 26(e). Pursuant to that rule, when the Nolans obtained information that was material to the issue at hand and corrected an earlier disclosure, they had an obligation to disclose it, which they did. The Lipps contend it was information the Nolans should have had earlier, and the Nolans failed to engage in due diligence while responding to the initial discovery requests in violation of I.R.C.P. 26(f). As such, the Lipps argue, the December disclosures were untimely. However, there is nothing in the record to support the allegation the Nolans were derelict in their efforts to obtain the Dooley affidavit and supporting emails. The district court did not err in holding the Dooley affidavit was filed within the extended discovery deadline and, therefore, was timely filed.

Following the summary judgment hearing and subsequent memorandum decision and order on motions for summary judgment, the Lipps filed a motion to reconsider, arguing the district court failed to consider the affidavit of Dawn Meyer and, therefore, did not have adequate information to consider the Dooley affidavit. In its order on the motion to reconsider, the district court specifically rejected the Lipps' arguments because the district court addressed both the timeliness of the Dooley affidavit and attached emails and Meyers affidavit during oral argument at the summary judgment hearing; nonetheless, the district court found the Dooley affidavit and attached emails timely filed and dispositive of the misrepresentation claim.

"The trial court must consider new evidence that bears on the correctness of an interlocutory order if requested to do so by a timely motion under Rule 11(a)(2)(B) of the Idaho Rules of Civil Procedure." *PHH Mortg. Servs. Corp. v. Perreira*, 146 Idaho 631, 635, 200 P.3d 1180, 1184 (2009). The Lipps argue the district court erred in considering new information as it decided the summary judgment motion. However, even if the district court did not consider the information as part of the summary judgment, the Nolans could have filed a motion for reconsideration, and the court would have been obligated to consider the new information. In Lipps' brief, they acknowledge a trial court is required to consider new or additional facts by stating, "[u]ntil final judgment has been entered, an order is not final. The trial court is therefore

10

obligated to consider additional information and evidence that may impact a summary judgment order." The Lipps provide a string cite in support of this statement. The citation provided indeed supports the proposition for which it is cited and highlights the precedent that requires a trial court to consider additional evidence--like the Dooley affidavit at issue here. At oral argument, the Lipps argue they could have challenged the admission and consideration of the Dooley affidavits and attached emails but provide no bases for the challenge other than the bases they argued at the summary judgment hearing. In the absence of challenges different than those already addressed by the district court, we cannot conclude the evidence would have been excluded from consideration during the motion to reconsider. Thus, the Lipps own argument is undercut by the very authority they cite. The district court did not err in considering the supplemental discovery responses and evidence timely disclosed prior to deciding the summary judgment motion.

**2.      The motion to strike the Dooley affidavit pursuant to I.R.C.P. 37(c)(1)**

On appeal, the Lipps argue the Dooley affidavit and attached email should have been stricken as a discovery sanction pursuant to I.R.C.P. 26. They also argue that the district court erred in holding they needed to file a motion pursuant to I.R.C.P. 37 for sanctions as I.R.C.P. 37 addresses sanctions in addition to, not instead of, excluding the evidence.

The Lipps filed a motion for reconsideration regarding the award of attorney fees, specifically challenging the district court's denial of the motion to strike the Dooley affidavit. In their motion to reconsider, the Lipps argue the affidavit was late disclosed evidence that was produced far too late given the initial request during discovery. The Lipps argue the presiding district court judge did not have all the facts necessary to make an informed decision about the Dooley affidavit and due to the egregious nature of the discovery violation, sanctions against the Nolans should have been assessed. In its memorandum decision and order on the motions, the district court specifically noted that during oral argument at the summary judgment hearing, the timing of the email and its disclosure were addressed by the district court. The court further stated that "the proper mechanism to address a discovery dispute is a motion under I.R.C.P. 37(c)(1). The Lipps did not file a motion objecting to the untimely discovery. Nor did the Lipps lodge a discovery objection during the summary judgment hearing held on January 19, 2023."

Idaho Rule of Civil Procedure 37(c)(1) states:

(1)     *Failure to Disclose or Supplement*. If a party fails to supplement discovery responses when required or fails to comply with a disclosure requirement ordered by the court pursuant to a Rule 16 scheduling or pre-trial order, the party is not

11

allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

      (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

      (B) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

The Lipps argue it was only in the Nolans' reply brief when they first learned of the emails and affidavit and time constraints prevented the Lipps from filing a discovery motion prior to the summary judgment hearing; the record belies this assertion. As noted above, both counsel were informally served copies of the emails in November. The Dooley affidavit, with the emails attached, was filed on December 20, 2022, and served on one of the Lipps' counsel. The summary judgment motion hearing was scheduled for January 19, 2023; thus, the Lipps had thirty days between the formal filing of the affidavit and emails and the scheduled hearing to file objections or otherwise challenge the filings. The Lipps did not file an objection to the Dooley affidavit on the grounds that it violated I.R.C.P. 26 before or during the January 19 hearing. The Lipps did, however, file an affidavit from Dawn Meyer on the day of the hearing in an effort to refute the Dooley affidavit. The filing of the Meyer affidavit indicates the Lipps were aware of the Dooley affidavit and attached emails and had time to file a motion to strike the affidavit but did not.

But even if the Lipps did not have time to file a motion before the January 19 hearing, at that hearing, the Lipps were provided an opportunity to be heard on the matter and object. As noted by the district court, at the summary judgment hearing, the Lipps did not argue an I.R.C.P. 26 discovery violation, arguing instead the affidavit and emails were inadmissible hearsay and that the affidavit lacked proper foundation, challenging the validity of the Dooley affidavit and attached emails, not the disclosure date. The Lipps filed the formal motion to strike the Dooley affidavit on January 24, 2023, five days after the summary judgment hearing. Even in that motion, the Lipps did not allege an I.R.C.P. 26 discovery violation as the basis to strike the affidavit and emails. Instead, they argued the affidavit did not qualify as a business record exception to hearsay pursuant to Idaho Rule of Evidence 803 and that including the Dooley affidavit and emails in a response to the Lipps' summary judgment motion violated I.R.C.P. 56. Thus, the record indicates that the Lipps never objected to the Dooley affidavit at the summary judgment hearing or in their formal motion to strike the affidavit on the basis that it violated I.R.C.P. 26. In the summary judgment hearing, the Lipps never argued the evidence was untimely pursuant to I.R.C.P. 26 or why the most

12

severe remedy--excluding the evidence--was the most appropriate remedy as compared to a lesser sanction or why a lesser sanction would not be appropriate, especially because the Nolans noted that as a lesser sanction, the Lipps could have, but did not, file a motion to continue the summary judgment hearing. As it related to the summary judgment motion, the Lipps never argued the Dooley affidavit and attached emails violated I.R.C.P. 26. Generally, issues not raised below may not be considered for the first time on appeal. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991). Consequently, we find the issue not preserved for this appeal.

Also, even if the argument was raised in the district court, on appeal, the Lipps fail to identify the relevant standard of review--abuse of discretion--and provide argument and authority explaining how the district court abused its discretion by failing to exclude the evidence. Instead, they simply assert on appeal that "the trial court improperly considered evidence that should have been stricken as a violation of I.R.C.P. 26(f)." This conclusory statement fails to provide sufficient argument and authority; resulting in a waiver of the claim. *See Bergeman v. Select Portfolio Servicing*, 164 Idaho 498, 502, 432 P.3d 47, 51 (2018) (holding that Bergeman's claim that district court erred by denying his motion to consolidate failed based on his failure to identify and apply applicable standard of review); *see also Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997) (holding a party waives an issue on appeal if either argument or authority is lacking). Consequently, because the Lipps failed to provide sufficient argument and authority with citation to the record, we decline to address the claim that the district court erred by admitting the Dooley affidavit and attached emails for consideration as part of summary judgment.

It was not until the motion for reconsideration that the Lipps mention I.R.C.P. 26. There, the Lipps asserted the untimely disclosure was "a serious discovery violation for which the Nolan Defendants should be penalized, rather than Plaintiffs," and cited I.R.C.P. 26(f)(3) and I.R.C.P. 37(a)(4)-(5). At the hearing on the Lipps' motion for reconsideration, the Lipps argued the Dooley affidavit was untimely disclosed but did not explicitly or specifically reference I.R.C.P. 26. Instead, the Lipps argued it was "an issue of fundamental fairness," and that they were not "just talking about some technical application or interpretation of court rules. We're talking about notice. We're talking about basic issues, the whole reason we have court rules." The Lipps also argued: "[I]n compliance with the fundamental rules of fairness regarding notice and disclosure of exculpatory evidence that the court should reconsider, even though we're taking the extraordinary step here of reconsidering another judge's opinion." To the extent this language, in

conjunction with the citation in the written motion to I.R.C.P. 26 preserves the claim, it nonetheless fails.

The imposition of discovery sanctions is within the discretion of the trial court and will not be overturned absent a manifest abuse of discretion. *Sommer*, 170 Idaho 413 at 427, 511 P.3d at 847. In determining whether sanctions are appropriate, the Court must first determine whether a discovery violation occurred. *Easterling v. Kendall*, 159 Idaho 902, 909, 367 P.3d 1214, 1221 (2016). "In Idaho, two general rules guide a trial court in imposing sanctions. The trial court must [1] balance the equities by comparing the culpability of the disobedient party with the resulting prejudice to the innocent party and [2] consider whether lesser sanctions would be effective." *Erickson v. Erickson*, 171 Idaho 352, 362, 521 P.3d 1089, 1099 (2022) (quoting *Noble v. Ada Cnty. Elections Bd.*, 135 Idaho 495, 499-500, 20 P.3d 679, 683-84 (2000) (internal quotation and citation omitted)).

As noted above, in this case, there was no discovery violation. But even if there were, the Lipps do not argue, let alone demonstrate, that the district court erred in admitting and considering the Dooley affidavit and attached emails or that exclusion of the Dooley affidavit and attached emails was the most appropriate sanction; in fact, the Lipps provide no argument at all regarding the I.R.C.P. 26 analysis regarding the imposition of sanctions for Rule 26 violations. Instead, as noted above, they simply provide a conclusory statement that "the trial court improperly considered evidence that should have been stricken as a violation of I.R.C.P. 26(f)" and characterize the discovery violation as "egregious." For the reasons noted above, this conclusory statement, unsupported by argument and authority, including an analysis of the relevant standard of review, results in a waiver of the claim. *See Bergeman*, 164 Idaho at 502, 432 P.3d at 51; *see also Powell*, 130 Idaho at 128, 937 P.2d at 440. Consequently, because the Lipps failed to provide sufficient argument and authority with citation to the record, we decline to address the claim the district court erred by admitting the Dooley affidavit and attached emails. Because the district court did not err in failing to exclude the Dooley affidavit and emails pursuant to I.R.C.P. 26, we need not address the Lipps' argument regarding I.R.C.P. 37, and whether that provides a sanction in addition to, rather than as an alternate to, I.R.C.P. 26.

### 3. Dooley affidavit and argument were properly considered

The Lipps allege the Nolans raised the Dooley affidavit and attached emails for the first time in a reply brief one week before the summary judgment hearing, depriving the Lipps of a

14

meaningful opportunity to respond. The Lipps describe the emails as "exculpatory and dispositive because it negated the 'reasonable reliance' element of Plaintiff's misrepresentation claim." The Lipps claim consideration of evidence filed only in a reply brief was unfair and violated I.R.C.P. 56.

Under I.R.C.P. 56(c)(1)(A):

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.

Generally speaking, dispositive arguments raised for the first time in a reply brief should not be considered by the trial court because there is no meaningful opportunity for the opposing party to respond. *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005). The key consideration in prohibiting new arguments or evidence in a reply brief is fairness because of a lack of opportunity for the other party to respond. *Id.* Here, however, the Lipps had a meaningful opportunity to respond to the Dooley affidavit and attached emails and did so when they filed Meyer's affidavit which directly addressed the statements in the Dooley affidavit and attached emails. The district court considered the statement of Meyer, despite opposing counsel noting that the statement was not an affidavit (it was not notarized) or a declaration (it was not sworn to under penalty of perjury). Additionally, both of the Lipps' attorneys had been informally served with the emails on November 30, 2022, and one of the Lipps' attorneys was formally served on December 20, 2022. Although that attorney did not share with the other attorney that the Lipps had been formally served with the documents, it does not change the fact the filing was served on Lipps' counsel and the Lipps had approximately thirty days to respond to the filing. The importance of the evidence as it related to the misrepresentation claim was immediately apparent and that the Nolans would be relying on it; hence the reason for filing it. We do not find it credible that one of the Lipps' attorneys did not know the material would be relied upon until he read the Nolans' reply brief. If the concern was the late disclosure, the Lipps had several procedural mechanisms available, like moving to continue the summary judgment hearing, so that they had time to assess the information. Counsel instead chose to file the Meyer affidavit to rebut the claims. Since the Lipps had time to respond to the filing, and did so, the Lipps' argument of unfairness is unpersuasive.

15

Finally, the Lipps allege the "new" information and argument in the reply brief prejudiced them, resulting in the improper granting of summary judgment and subsequent award of attorney fees. We disagree. Lipps' counsel were aware of the deficiencies of the misrepresentation claim on grounds separate from those relating to the Dooley affidavit. The grant of attorney fees on the misrepresentation claim was based on two alternate bases, as discussed below. That the emails completely undermined an otherwise improperly pled allegation of misrepresentation did not unduly prejudice the Lipps.

### 4. Service on only one attorney of record

Idaho Rule of Civil Procedure 5(b)(1) requires service on the attorney if a party is represented. The Lipps are represented by two attorneys from the same firm, one who identifies as senior counsel and one who identifies as junior counsel. Informal notice of the emails was provided to both counsel and formal notice of the Dooley affidavit and attached emails was provided to the junior counsel. The Lipps argue this is improper service because it should have also gone to the senior counsel. Nothing in I.R.C.P. 5 or case law supports this interpretation. The filings were served on an attorney representing the party.[4] While it is good practice to serve all attorneys who are involved in a case, the language of the rule does not use the term "every" or "all" or provide any indication of quantity. There is nothing requiring service on every attorney and therefore, service could not be deemed invalid. Once one attorney has actual knowledge of the served documents, if he fails to communicate receipt or share the documents with co-counsel, that is an internal failure, and not the failure of the serving party. Here, one counsel was properly served through formal procedures, meeting the requirement. Counsel's failure to notify the other counsel is not a reason to find service invalid. The Lipps cannot demonstrate a rule violation nor prejudice resulting from service on only one of two counsel, particularly when both counsel were

---

[4] At oral argument, the Nolans acknowledged that the Rules of Electronic Filing and Service may require service on all attorneys. However, as they argued in the district court, on appeal, the Nolans argue the remedy for any violation was for the Lipps to request additional time to review the information and/or to file a motion to continue the summary judgment motion for time to properly assess the information. Neither in the district court nor on appeal, do the Lipps cite to or provide argument relevant to the Idaho Electronic Rules for Filing and Service, thus, we decline to address any argument arising under that rule. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991) (Issues not raised below may not be considered for the first time on appeal.). A party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997).

informally served with the information. We decline to interpret I.R.C.P. 5 as a requirement to individually serve all attorneys representing a single party, although we encourage the practice.

**B.    The Required Elements for an Implied Easement Have Not Been Established**

The Lipps assert the district court determined an implied easement for the benefit of Lot 2A did not exist because the district court incorrectly concluded there was no intent for the easement to be permanent and because the court erroneously analyzed the reasonable necessity element of an implied easement. The Nyes contend the district court correctly determined an implied easement did not exist because evidence established there was no intention to permanently encumber Lot 1A at the time of severance from Lot 2A and the district court correctly analyzed the reasonable necessity element.

An easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner. *Akers v. D.L. White Const., Inc.*, 142 Idaho 293, 301, 127 Idaho 196, 204 (2005). To establish an implied easement by a prior use, there are three elements that must be proven:

> (1) unity of title or ownership and a subsequent separation by grant of the dominant estate; (2) apparent continuous use long enough before separation of the dominant estate to show that the use was intended to be permanent; and (3) the easement must be reasonably necessary to the proper enjoyment of the dominant estate.

*Spectra Site Commc'ns, Inc. v. Lawrence*, 160 Idaho 570, 574, 377 P.3d 75, 79 (2016) (quoting *Bird v. Bidwell*, 147 Idaho 350, 352, 209 P.3d 647, 649 (2009)). In order for reasonable necessity to exist, strict necessity is not needed, nor must the property be landlocked, instead, the question is "whether reasonable necessity existed at the time the dominant and servient estates were severed." *Aizpitarte v. Minear*, 170 Idaho 186, 197, 508 P.3d 1260, 1271 (2022).

In this case, the questions regarding Lots 1A and 2A stem from the Nolans' ownership of both lots and the subsequent sale of Lot 2A to the Lipps and Lot 1A to the Nyes. Consequently, we look at whether there was an implied easement at the time the Nolans sold Lot 1A to the Lipps.

The district court concluded that as to the first element of the implied easement analysis, there is no question that the Nolans had unity of title and severed the two lots and, thus, the first element had been met. As to the second element, the district court concluded that the relevant time for the question for apparent continuous use was the summer of 2019. Based on the conflicting evidence presented, the district court concluded there was a genuine issue of material fact as to whether that summer, the Nolans were regularly using the road across Lot 1A to Chickaree Lane

17

for both ingress and egress to the Lot 2A home. For the third element, the district court determined the Lipps had not established reasonable necessity because the Lipps had reasonable access to the property at the time of severance by use of the recorded driveway via Hawkins Road. The district court determined enjoyment and access of Lot 2A was sufficiently satisfied by the existence of the recorded driveway, and although access via Lot 1A would be convenient at times, the lack of access through Lot 1A did not significantly impact the Lipps enjoyment of the land.

In *Capstar Radio Operating Co. v. Lawrence*, 153 Idaho 411, 283 P.3d 728 (2012), the Supreme Court discussed reasonable necessity, finding that although reasonable necessity was not strict necessity, if an alternate access exists, even one which is thought to be expensive or inconvenient, then an easement by necessity must not be granted. *Capstar*, 153 Idaho at 419, 283 P.3d at 736. "The requirements of necessity do not require that there be access to all portions of a parcel or that there be the most convenient access possible." *Id.*

In their appeal, the Lipps assert the district court misconstrued the standard for reasonable necessity because it concluded that the Lipps' access to Hawkins Road precluded a finding of reasonable necessity. They argue access is necessary because at least twice a year, the Lipps require access to the water valves and utilities meters located at the junction of Chickaree Lane and the dirt road crossing 1A and without the easement, the Lipps would need to relocate the valves and meters at great expense and inconvenience. The Lipps also argue reasonable necessity exists because during the winter months, it is difficult for delivery and service vehicles to access the property from Hawkins Road via the driveway. These arguments are unpersuasive.

The district court first found that the doctrine of reasonable necessity did not require Lot 2A to be landlocked in order to be established. The district court explicitly acknowledged the property was not landlocked and had ingress and egress on Hawkins Road. The district court noted that historically, the Nolans regularly accessed Lot 2A from Hawkins Road and the driveway. The district court further found that the Lipps desire to have two separate driveways--one onto Hawkins Road and the other through Lot 1A--did not constitute reasonable necessity. Finally, the district court noted in those cases where Idaho appellate courts have recognized an implied easement, it was because the property in question had no other reasonable means of access.

The Lipps argue the only way they can access their water valve and utility meters is through Lot 1A and rely on *Aizpitarte* to support a finding of necessity. First, traversing Lot 1A is not the only way the Lipps can access their water valve and utility meter. The Lipps' water valve and

18

utility meters are located at the junction of Chickaree Lane and the dirt road crossing 1A. Consequently, the meters and valves are accessible using Chickaree Lane, which the Lipps can access pursuant to the Chickaree Lane road maintenance agreement. Second, the reliance on *Aizpitarte* is misplaced. In *Aizpitarte*, the Supreme Court affirmed the reasonable necessity for the easement because the other access route to the property, the northern driveway, was "often saturated, swampy, and difficult to travel through." *Aizpitarte*, 170 Idaho at 199, 508 P.3d at 1273. Thus, the holding was not based upon just providing access to the water well or septic servicing or because the northern driveway was less convenient, as the Lipps' assert, but because at all times relevant at the time of severance, the easement was necessary "to access, repair, and maintain the eastern and southern portions of the Aizpitarte Property." *Id.* at 198, 508 P.3d at 1272. Put another way, the property in *Aizpitarte* required an alternative means of access because during adverse weather conditions, the northern driveway became difficult to traverse and without the easement, the owners could not fully utilize and enjoy the property. The same is not true for the Lipps because at the time of severance, the Lipps had reasonable access to all parts of their property.

The Lipps alternatively argue necessity exists based on an inability for delivery and service vehicles to access the property. The record indicates that at the time the Lipps purchased the property, there was a sufficient area for delivery trucks to enter the property, turn around, and then exit the property. After purchase, the Lipps built a fence blocking a portion of the property, limiting the available space for delivery trucks and service vehicles to navigate the driveway. "A property owner cannot create a necessity through his or her own actions." *Capstar*, 153 Idaho at 418, 283 P.3d at 735. The inability of trucks to navigate the restricted space is attributable to the Lipps' actions and, thus, the necessity they argue is one of their own making. Moreover, the Lipps' assertion that it was difficult for the service and delivery trucks to access Lot 2A was challenged at the hearing. The Nyes noted that given the geography of the region and the way many homes were built, service and delivery trucks were adept at backing into properties and then pulling forward to exit the property.

Finally, "When deciding the issue of reasonable necessity, the court should 'balance the relative situations pro and con, as to the respective convenience, inconvenience, costs and all other pertinent, connected facts.'" *Akers v. Mortensen*, 147 Idaho 39, 46, 205 P.3d 1175, 1182 (2009) (quoting *Eisenbarth v. Delp*, 70 Idaho 266, 270, 215 P.2d 812, 814 (1950) (citations omitted)). The inconvenience suffered by the Lipps by not having access across Lot 1A is de minimis since

19

the Lipps have unrestricted and complete access to their water valves and meters via Chickaree Lane. In contrast, because the dirt road bisects Lot 1A vertically, dividing the property almost in half, it is both inconvenient and deprives the Nyes the full access and ability to freely use their entire property in an exclusive manner. The Lipps failed to establish an implied easement, and the district court did not err in finding no implied easement existed.

## C. The Road Maintenance Agreement Did Not Create a Covenant Providing Lot 2A Access Across Lot 1A

The Lipps assert the road maintenance agreement, as a recorded instrument, necessarily created a restrictive covenant, binding all successive owners, to allow Lot 2A access to Chickaree Lane via Lot 1A. The Lipps argue the district court erred by disregarding the historic use and physical location of the driveway which established the specific location, even though it is not referenced in the road maintenance agreement. The Nyes argue the road maintenance agreement did not create a restrictive covenant that would permit access across Lot 1A, and even if did, it would be void because restrictive covenants must be clearly expressed and construed strictly. The Nolans argue that because the road maintenance agreement does not specifically indicate a right of access for Lot 2A via Lot 1A, there was no intent to create such a right.

"When a court interprets a restrictive covenant, it is to apply generally the same rules of construction as are applied to any contract or covenant." *Brown v. Perkins*, 129 Idaho 189, 192, 923 P.2d 434, 437 (1996). "Where contract terms are clear and unambiguous, the interpretation of the contract's meaning is a question of law." *Id.* "On the other hand, where the terms of a contract are ambiguous, the interpretation of the contract's meaning is a question of fact." *Id.* "The preliminary question of whether a contract is ambiguous, is a question of law over which this Court exercises free review." *Id.* "To determine whether there is an ambiguity in the Restrictive Covenants . . . this Court must determine whether the provisions are reasonably susceptible to conflicting interpretations." *Id.* at 193, 923 P.2d at 438. "[B]ecause restrictive covenants are in derogation of the common law right to use land for all lawful purposes, the Court will not extend by implication any restriction not clearly expressed." *Shawver v. Huckleberry Estates, L.L.C.*, 140 Idaho 354, 363, 93 P.3d 685, 694 (2004). "[A]ll doubts are to be resolved in favor of the free use of land." *Id.*

Beginning with the plain language of the covenant, the first step is to determine whether or not there is an ambiguity. *Brown*, 129 Idaho at 192, 923 P.2d at 437. "Words or phrases that have established definitions in common use or settled legal meanings are not rendered ambiguous

20

merely because they are not defined in the document where they are used." *City of Chubbuck v. City of Pocatello*, 127 Idaho 198, 201, 899 P.2d 411, 414 (1995). Rather, a covenant is ambiguous when it is capable of more than one reasonable interpretation on a given issue. *Post v. Murphy*, 125 Idaho 473, 475, 873 P.2d 118, 120 (1994). To determine whether or not a covenant is ambiguous, the court must view the agreement as a whole. *Brown*, 129 Idaho at 193, 923 P.2d at 438.

The second step in contract or covenant construction depends on whether or not an ambiguity has been found. If the covenants are unambiguous, then the court must apply them as a matter of law. *City of Chubbuck*, 127 Idaho at 201, 899 P.2d at 414. "Where there is no ambiguity, there is no room for construction; the plain meaning of the language governs." *Post*, 125 Idaho at 475, 873 P.2d at 120. Conversely, if there is an ambiguity in the covenants, then interpretation is a question of fact, and the court must determine the intent of the parties at the time the instrument was drafted. *Brown*, 129 Idaho at 192-93, 923 P.2d at 437-38.

At the time of drafting and signing the Chickaree Lane road maintenance agreement, Lots 1A and 2A were oriented on a north/south axis and owned by the Sangders. There are several provisions of the road maintenance agreement relied upon by the parties. First, Section II DESCRIPTION OF EXISTING ROADWAY, describes the Chickaree Lane roadway as an "Easement for ingress and egress over, under and across the South twenty (20) feet of Lot 1A, Lot 4A, and Lot 5A, Block 4 of Lakeside Place Replats in Bonner County, Idaho." The described easement ran along the southern border of the Sangders' Lot 1A. The Lipps rely on a different portion of the road maintenance agreement, identified at the beginning of the agreement for which there is no heading, which reads as follows: WHEREAS: "Access to each of said parcels of property is across and along a common roadway known as Chickaree Lane." The "said parcels" are Lots 1A, 2A, 4A, and 5A. The Lipps further contend the language of Section VII of the agreement created a covenant because it states, "[t]he rights and obligations set forth herein shall inure to and be binding upon the heirs, successors or assigns of the parties hereto and shall constitute a covenant running with the parcels of real estate affected hereby."

The road maintenance agreement does not mention, address, or explicitly grant an easement across Lot 1A for the benefit of Lot 2A. Additionally, the agreement was entered into prior to the reorientation of the lots and the construction of a house and driveway on Lot 2A with ingress and egress to and from Hawkins Road. Nonetheless, the Lipps argue that the "Whereas"

21

section creates a covenant as it relates to Lot 2A and that according to Subsection VII, that covenant runs with the land. To the extent the "Whereas" section and Subsection VII, when read together, create any ambiguity about the existence of a covenant and rights of access, resolution of the question turns on the intention of the parties at the time they entered into the road maintenance agreement.

The Lipps argue it must have been the intent of the drafters of the agreement to provide Lot 2A access to Chickaree Lane via Lot 1A. That claim is specifically refuted by Otto Sangder's affidavit. The Sangder affidavit stated, "The Road Maintenance Agreement was never intended by me to create an easement for access to Lot 2A over Lot 1A, and the only reason Lot 2A was included was because I owned both lots 1A and 2A. Access to Lot 2A was the driveway onto Hawkins Road." The Sangder affidavit continued:

> As our residence [on Lot 2A] was nearing completion, I contracted with BILL HATCHER to install a driveway from the residence directly onto Hawkins Road. Thereafter, access to the residence was via Hawkins Road. It was never our intention to encumber Lot 1A with an easement for the benefit of Lot 2A.

Otto Sangder opined that Lot 2A was only included because he owned both lots at the time the road maintenance agreement was created. At that time, Lots 1A and 2A had a north/south orientation and thus, Chickaree Lane abutted Lot 2A on its southern border. However, following the replat, Lot 2A was north of Lot 1A and was no longer adjacent to Chickaree Lane. Otto made clear that once the lots were replatted, he never intended to create an easement over Lot 1A for the benefit of Lot 2A.

The district court found, based on the evidence presented, that the intent of the parties at the time of creating and signing the road maintenance agreement was not to create an easement over Lot 1A to Lot 2A; instead, it was to establish the financial responsibility between the landowners for the care and upkeep of Chickaree Lane. The district court found there was nothing in the record to dispute the facts set forth in Otto Sangder's affidavit and found the road maintenance agreement did not intend to create or actually create a covenant or easement. We agree with the district court.

The Lipps are asking this Court to determine that despite no explicit covenant and despite the explicit intent not to create a covenant or easement, there is an easement by implication. This we decline to do, as the Court will not extend by implication any restriction not clearly expressed. *Shawver*, 140 Idaho at 363, 93 P.3d at 694.

The Lipps assert that this Court should look at the historic use of the road as evidence of the implied covenant. We decline to do so where the road maintenance agreement does not explicitly grant or create a covenant or easement, and it was never the intent of the parties to do so. Lot 2A can access Chickaree Lane (and by extension, the water valves and utility meters) from Hawkins Road. Consequently, the district court did not err in concluding the road maintenance agreement did not create a restrictive covenant across Lot 1A for the benefit of Lot 2A.

## D. Attorney Fees

The Lipps appeal from the award of attorney fees by the district court on the summary judgment motion arguing the district court improperly penalized them by finding the misrepresentation claim was pursued frivolously, and alternatively, for considering improperly disclosed evidence in reaching its decision. The Lipps also appeal from the denial of the motion for reconsideration on the issue of attorney fees again arguing the district court considered evidence inappropriately disclosed and failed to consider the Meyer affidavit that they claim refuted the Dooley affidavit.

### 1. Attorney fees on summary judgment

The district court found two alternate bases on which to dismiss the Lipps' misrepresentation claim: (1) the emails and Dooley affidavit demonstrate that at the time the Lipps purchased the property, there was no present intent to convey or provide an easement; and (2) the initial complaint alleging fraud or misrepresentation failed to plead all nine elements and therefore failed as a matter of law. Each reason on its own provides a sufficient basis for the court to dismiss the representation claim, and either individually or in the aggregate, establish the claim was pursued frivolously.

The emails and affidavit are dispositive for the misrepresentation claim and establish the claim was pursued frivolously. The emails, sent by Meyer acting as the agent of the Lipps, illustrate that the Lipps' were on notice that there was no easement from Lot 2A across Lot 1A to Chickaree Lane and, thus, the Lipps had no expectation or anticipation of use of the dirt road across Lot 1A. The emails also show the Lipps contemplated erecting a fence between Lot 1A and Lot 2A to provide security for their property and prevent vehicles driving to Lot 2A from Lot 1A. The Dooley affidavit further confirms there was no negotiation for or indication of an easement across Lot 1A in the purchase and sale agreement.

23

But the district court did not rely solely on the Dooley affidavit and attached emails in finding the claim did not allege a genuine issue of material fact. The district court also looked to Deborah Lipps' declaration where she stated:

> According to the Maintenance Agreement for Chickaree Lane, attached to my complaint filed in this case, the property I own, Lot 2A, is required to pay for maintenance of Chickaree Lane. This fact served as confirmation to me, **before I purchased Lot 2A**, that Lot 2A did indeed have direct access to Chickaree Lane from Lot 2A via the driveway through Lot 1A.

The district court focused on two of the elements of a misrepresentation claim: (1) the Lipps must be unaware the representation was false, and (2) must have relied on it. The district court concluded that based on the evidence presented, Deborah Lipps' declaration demonstrates that she was aware the Seller's Property Disclosure contradicted the road maintenance agreement and, therefore, she could not establish she was unaware of the alleged falsity of the real estate property listing at the time of purchase. And also based on her affidavit, Deborah Lipps relied, at least in part, on the road maintenance agreement, and not on the seller's representations in the MLS listing nor the Seller's Property Disclosure, that she had access across Lot 1A. Thus, because her affidavit affirmatively disproved two of the elements of a misrepresentation claim, the district court concluded as a matter of law, there was no genuine issue of material fact as to the misrepresentation claim.

Even if the district court had erred in considering the Dooley affidavit and attached emails, the Lipps' initial complaint listed only four of the required nine elements for misrepresentation or fraud and fails as a matter of law. Lipps' counsel conceded the point at the December 8, 2022, hearing when he acknowledged he would not even try to go to trial on fraud. Further, at the hearing on the motion for reconsideration, the Lipps' counsel again acknowledged deficiencies in the pleadings related to the misrepresentation claim when he stated:

> the import of the motion by the Nolans was the--which was a joinder which was, hey, they didn't plead the elements. And I went back and looked at the pleadings and said, you know, I don't think the elements are pled here, so that's why we . . . filed a motion to amend the pleadings.

Although the Lipps filed a motion to amend the complaint, in part to supplement the misrepresentation claim, the amendment had not been approved by the district court. Without permission from the court permitting the amendment, the amended complaint was not before the district court and could not be considered at the summary judgment hearing. Because the Lipps'

24

complaint did not allege the nine elements of a fraud claim, as a matter of law, the claim was subject to summary dismissal.

Trial counsel was aware that he had not alleged a claim of misrepresentation but nonetheless, pursued the claim. He did not withdraw the claim or appeal the lack of ruling on the motion to amend the complaint. As a result, the district court found the claim had been pursued frivolously and awarded attorney fees on that basis. The district court did not err in doing so.

The Lipps argue, in the conclusion section of their opening brief:

> Even if it were technically appropriate for the trial court to consider late disclosed materials requested in discovery, not served on counsel of record, and not referenced in Nolan's summary judgment motion, an award of attorney fees for a frivolous claim is an abuse of discretion. There is no evidence in this record to demonstrate Plaintiff's were aware of their agent's email--assuming the email were authentic.

This statement contains a factual error, as counsel of record was served the materials. To the extent the Lipps are arguing the district court abused its discretion in imposing attorney fees for pursuing a claim that failed as a matter of law and that trial counsel knew was not properly pled, we disagree. However, more problematic for the Lipps is that the statement regarding attorney fees is conclusory and fails to address the fact that the fraud claim failed as a matter of law, regardless of the Dooley affidavit and materials, because it was not adequately pled in the complaint. A party waives an issue on appeal if either argument or authority is lacking. *Powell*, 130 Idaho at 128, 937 P.2d at 440. Consequently, the Lipps have waived any claim of error as it relates to the award of attorney fees on the ground that the claim failed as a matter of law. "Where a lower court makes a ruling based on two alternative grounds and only one of those grounds is challenged on appeal, the appellate court must affirm on the uncontested basis." *Rich v. State*, 159 Idaho 553, 555, 364 P.3d 254, 256 (2015).

### 2. Attorney fees on the motion for reconsideration

The Lipps appeal the denial of the motion to reconsider the attorney fees arguing the district court considered the improperly disclosed Dooley affidavit and failed to properly consider the Meyer affidavit which refuted the authenticity of the Dooley affidavit. The Lipps also assert the district court erred in imposing attorney fees for pursuing a frivolous claim. At the hearing on the Lipps' motion to reconsider, counsel argued,

> [w]e hadn't asked for reconsideration of the ruling--sorry, misrepresentation claim. We only asked for reconsideration of the fee award.

And in reality, it's--Your Honor, in reality the motion is not so much reconsideration of the fee award. It's reconsideration of the finding that it was a frivolous claim.

On appeal, the Lipps fail to address the district court's determination, and the concession of counsel, that the misrepresentation failed as a matter of law because the elements had not been adequately pled, and was therefore, frivolous. As the excerpt above demonstrates, the Lipps did not contest the imposition of attorney fees, only the factual finding that it was frivolous. The Lipps fail to address, through the appropriate standard of review and with argument and authority, their claim that the imposition of attorney fees is an abuse of discretion where a party knowingly pursues a frivolous claim. The claim is not listed as an issue nor does the opening brief contain argument and authority on this issue. Instead, there is one sentence in the conclusion section of the brief that reads, ". . . an award of attorney fees for a frivolous claim is an abuse of discretion." This is insufficient to preserve an issue for appeal. A party waives an issue on appeal if either argument or authority is lacking. *Powell*, 130 Idaho at 128, 937 P.2d at 440.

The Lipps pursued a misrepresentation claim that they acknowledged several times throughout the proceeding was not adequately pled. Although the Lipps moved for leave to address the deficiency through an amended complaint, the district court never ruled on the motion and the Lipps did not appeal from the district court's decision to defer, and then not rule, on the motion. Because the Lipps provide insufficient argument as to the claim that the imposition of attorney fees was an abuse of discretion and because the record supports the district court's finding that the case was pursued frivolously, we affirm the district court's award of attorney fees.

### 3. Attorney fees on appeal

An award of attorney fees may be granted under I.C. § 12-121 and I.A.R. 41 to the prevailing party and such an award is appropriate when the court finds that the appeal has been brought or defended frivolously, unreasonably, or without foundation. Where an appeal merely invites the appellate court to second guess the trial court on conflicting evidence, the prevailing party on appeal should be entitled to an award of reasonable attorney fees. *DeChambeau v. Estate of Smith*, 132 Idaho 568, 572, 976 P.2d 922, 926 (1999). The Lipps' misrepresentation claim failed as a matter of law and therefore, the appeal was pursued frivolously. The Lipps' implied easement claim, and alternatively, the restrictive covenant claim, asked the appellate court to second guess the district court, which we decline to do. Attorney fees are awarded to the Nyes and the Nolans.

### IV.

26

## CONCLUSION

The district court did not err in granting summary judgment because the supplemental discovery responses were timely provided and properly considered. Further, the district court did not err in dismissing the misrepresentation claim because it failed as a matter of law, and because the district court determined the misrepresentation claim was frivolously pursued, it did not err in awarding attorney fees to the prevailing party. Additionally, the district court did not err in determining that an implied easement did not exist because it lacked reasonable necessity, and the road maintenance agreement did not create a covenant or easement permitting access across Lot 1A. Therefore, the judgment of the district court is affirmed. Attorney fees and costs on appeal are awarded to the Nyes and the Nolans.

Chief Judge GRATTON and Judge TRIBE, **CONCUR**.